## No. 7038.

### MRS. S. C. F. LOGAN VS. HARRIET HERBERT ET AL.

A judgment can not have the force of *res adjudicata* as to one not a party to it.

Parol evidence, even when not objected to, is not admissible to prove that the owner of real estate agreed that it should be sold as the property of a third person.

In a suit to revive a judgment against a succession, the acceptance of service, and waiver of citation by the administrator will be deemed a good service, and will justify the judgment of revival.

A sale of property which had formerly belonged to a succession, (and which had been validly sold while the succession was in existence) made by the defunct administrator of the succession after it had been closed, and its assets partitioned, is absolutely void, and conveys no title whatever to the purchaser.

An unrecorded deed transfers the property to the purchaser as against all the world, *except* creditors of the vendor, and *bona fide* purchasers from him without notice.

The registry of a judgment against a party will operate as a legal mortgage on all the immovables of that party situate within the parish wherein the judgment is registered, whether the deed to such immovables is recorded or not; and such mortgage is good against every body that the judgment debtor's title to the immovables is good against.

The prayer of a petition that the sale of a certain immovable be declared void, and that the property *quoad* the plaintiff's rights be decreed to belong to 'a certain third person, will not, in the absence of any demand for a seizure and sale of the property, constitute the action an hypothecary one.

So far as relates to creditors holding antecedent mortgages on property, and their recourse on the property is concerned, judgments obtained by others against their debtor, estopping him from setting up ownership to the property, are not *res adjudicata* as to them.

APPEAL from the Fifth Judicial District Court, parish of East Feliciana. *Wedge*, judge *ad hoc*. Trial by jury.

*D. C. Hardee* for plaintiff and appellant.

*W. F. Kernan* and *T. B. Lyons* for defendants.

The opinion of the court was delivered by

SPENCER, J. In 1862 there was a probate sale of the property of Nancy Stevens, by Geo. W. Catlett, auctioneer. Among the property then sold was the land in controversy in this suit. It was adjudicated to Mrs. Fluker for $1275, one third of which was paid in cash, and the balance was represented by her two promissory notes at one and two years, as prescribed by the court. The auctioneer made out in due form his *procès verbal* of the sale, which was duly signed by Mrs. Fluker, but from some cause, perhaps the disorder of the times, he neglected to return it to the clerk's office. It was found among his papers in 1868, after his death, and put of record in 1870 in the recorder's office of East Feliciana.

In January, 1863, there was a final partition among the heirs of Ann Stevens, into which was carried the proceeds of these two notes of Mrs.

Fluker, which had been cashed by Dr. Barkdull, at the request of Dawson, the administrator of Ann Stevens. Mrs. Fluker went into possession of the land at once, and in 1867 gave H. H. Herbert permission to occupy and cultivate it. Dr. James D. Barkdull, the holder of Mrs. Fluker's two notes, died in 1865, and they were inventoried as part of his estate. After the war, in 1867, Mrs. Barkdull, representing her deceased husband's estate, visited Mrs. Fluker, and demanded payment of these two notes. She paid one of them. Subsequently Mrs. Fluker told Mrs. Barkdull that owing to her financial embarrassments she could not pay the second note. Mrs. Barkdull says that Mrs. Fluker told her "she could have the place sold for the second note"—the place she had given the note as part payment for.

On ninth February, 1867, Kernan & McVea obtained judgment against Mrs. Fluker for $3000 and interest, which was duly recorded in the mortgage office twenty-third February, 1867, and became a judicial mortgage on all her property in East Feliciana, where she resided, and where the land in question lies. The plaintiff, Mrs. Logan, a widowed daughter of Mrs. Fluker, subsequently bought this judgment, with full subrogation.

Mrs. Barkdull, when told by Mrs. Fluker to sell the land for the note, placed it in her attorney's hands with instructions to proceed to sell the place. But when the attorney went to get copy of the mortgage, in order to foreclose it, found that it was not of record in the recorder's or clerk's offices. Mrs. Fluker being heavily involved and sundry judgments against her, including that held by plaintiff, the attorney thought it useless to sue her on the notes, without having the benefit of the vendor's mortgage securing it. Whereupon, to meet this emergency, and escape the judicial mortgages, the attorney of Mrs. Barkdull, early in 1868, applied to Dawson, the defunct administrator of Ann Stevens. whose estate had been finally partitioned among her heirs five years before, and obtained his consent to file application in his name, as administrator, to sell the property over again as that of Ann Stevens. This, too, when the act of partition of the estate of Ann Stevens, on file, showed that the heirs had received and partitioned among themselves the price of this very land. But the order to sell was obtained, the property advertised, and sold to Mrs. Barkdull on fourth March, 1868, for $500. The particulars of this sale are established by parol, as the sheriff seems never to have made any return thereof of any kind.

On the seventh March, 1868, Mrs. Barkdull, by notarial act duly recorded, sold this land, with full warranty, to Harriet Herbert, a colored woman, who was represented by H. H. Herbert, of whom she was a servant and former slave. This H. H. Herbert and Harriet were at the time occupants of the premises by permission of Mrs. Fluker, who re-

sided at her homestead on the adjoining plantation. Mrs. Fluker testified that she never knew, heard of, or authorized the foregoing proceedings, and we are entirely satisfied of the truth of her statement.

But to proceed with this remarkable case. Mrs. Logan, some time after this sale to Harriet Herbert, issued execution on the Kernan and McVea judgment, and seized this land as the property of Mrs. Fluker, the judgment debtor. Harriet Herbert enjoined the sale on the grounds detailed above, averring her ownership, and pleading that Mrs. Fluker was estopped by her conduct and acts from claiming the land; that she had told Mrs. Barkdull to sell it, and could not now complain. Mrs. Fluker filed an intervention, which was never served or put at issue, and it is shown she was not allowed for that reason on the trial to offer evidence. The case was tried by jury, who found for plaintiff, and "dismissing the intervention." From the judgment on this verdict Mrs. Logan appealed.

The Supreme Court held that Harriet Herbert possessed under a title not simulated, and which could not therefore be attacked by seizure, and affirmed the judgment, "reserving to Mrs. Logan her right of action to cause the sale from Barkdull to Herbert to be annulled."

Subsequently Mrs. Fluker brought a direct action against Harriet Herbert to recover this land. On appeal this court, first March, 1875, held that the judgment of dismissal in above named injunction suit was *res adjudicata* against Mrs. Fluker.

It is useless for us to review these decisions of our predecessors, except to say that we do not wish it understood that we assent to the doctrines they announce.

The present suit is brought by Mrs. Logan against Mrs. Barkdull, Harriet Herbert, and Mrs. Fluker, to have said sale from Barkdull to Herbert decreed a nullity—to have said property decreed to belong to Mrs. Fluker and decreed to be subject to the payment of plaintiff's judgment and mortgage.

Harriet Herbert filed an exception, setting up the two judgments above discussed as *res adjudicata,* and that plaintiff's petition discloses no cause of action.

These exceptions were properly overruled. The plaintiff shows abundant cause of action. The plea of *res adjudicata* based on the suit of Fluker vs. Herbert is of course without force as to Mrs. Logan. She was no party to it, and being a mortgage creditor, whose rights antedate that proceeding, can in no sense be said to be bound by a judgment against Mrs. Fluker, her debtor.

In the suit of Harriet Herbert vs. Mrs. Logan (the injunction suit) the Supreme Court do not pretend to decide that Mrs. Logan did not have a mortgage on this property, or that it was not subject to her

mortgage, or that the sale from Barkdull to Herbert was valid. The decision was that Herbert held by a title which was not a simulation, and which could not be indirectly attacked by seizure. It expressly reserves her right to bring this suit; for if the proceedings by which Herbert claims Mrs. Fluker was divested of title were nullities, then plaintiff's right to subject it to her mortgage is indisputable. So far as Mrs. Fluker is concerned, she is of course, whether rightfully or wrongfully, cut off by said judgments from claiming any thing in said property; so that if it were to bring $50,000, neither she nor her heirs could claim one dollar of the surplus it brought over plaintiff's debt. The effect of the judgment prayed for would be to annul said sale and restore said property to Mrs. Fluker's estate, only *quoad* the plaintiff's rights.

The answer is a general denial, admitting possession, averring ownership by purchase from Mrs. Barkdull, who, it is alleged, acquired from the estate of Ann Stevens, which is claimed to have had the legal title when Mrs. Barkdull bought. That any equitable title existing in Mrs. Fluker at the date of Barkdull's purchase Mrs. Fluker "did forego, lose, and transfer unto your respondent by consenting and agreeing to the said sales, and by standing by and permitting and encouraging the same to be made. That this divestiture out of Mrs. Fluker was complete and entire long before any alleged rights of the plaintiff could or did attach to said land." She alleges the value of her improvements, prays that Mrs. Barkdull be cited in warranty, and "if respondent is evicted from said land and improvements that she may have judgment against her therefor," and that plaintiff's suit be dismissed and her claim rejected.

Mrs. Barkdull, cited in warranty, repeats and adopts Herbert's answer in substance, avers her title *bona fide,* and pleads the prescription of one and five years.

Mrs. Fluker having died, her administrator answered, claiming title; to which the plea of *res adjudicata* was opposed and is good.

There was judgment rejecting plaintiff's demands, and she appeals.

There are, in reality, but two vital questions in this case, which it is necessary to decide, to wit: First, is plaintiff's judgment still in force? and, second, was Mrs. Fluker at the date of, or subsequently to, the recording of plaintiff's judicial mortgage, on twenty-third February, 1867, the owner of this land? If she was, plaintiff's mortgage attached to it; and even if it be true that Mrs. Fluker did in March, 1868, "forego, lose, and transfer her rights, by consenting, agreeing, standing by, permitting and encouraging" the sale of the property as that of the estate of Stevens, still she could not in that way or any other divest plaintiff of her rights upon the property. It would at most amount to an alienation by the debtor. We regard it therefore, so far as relates to existence

of plaintiff's hypothecary rights, as immaterial whether or not Mrs. Fluker did in fact so divest herself of the property. But we *will say, en passant*, that in our opinion the parol evidence allowed to be offered in this case to establish her consent that this property be sold as Stevens's was clearly inadmissible, especially as no fraud or deceit is charged or pretended against her.	If such evidence can be resorted to to divest one of title to real estate, then all I have got to do is to buy your property from a third person, and prove by parol that you consented and agreed to it.	We will say further that even if admitted without objection (which it was not), the evidence wholly fails to establish the fact.	The most that can be made out of it is that Mrs. Fluker told Mrs. Barkdull to make her money out of the land, she was unable to pay the note.	This certainly was no authority for the proceedings taken.

As to the question of the existence of plaintiff's judgment and mortgage, it rests entirely upon the objection that in the suit for its revival Calhoun Fluker, administrator, was not served with citation, but accepted service of the petition and waived citation.	We see no possible reason for doubting that this was a good service and justified the judgment of revival.	Why should the costs of a service of citation have been imposed upon the estate?	There is no pretense that the debt was not an honest and just one, or that it had ever been satisfied.	It would be monstrous to maintain that because the Code says one *may revive a judgment by citing the debtor*, that therefore an answer or acceptance of service would be ineffective as a basis of such revival.	Art. 177 C. P. forbids such a conclusion.

As to Mrs. Fluker's ownership of this land on twenty-third February, 1867, it is difficult to see how it can be questioned.	Nobody disputes, on the contrary every body admits, that she acquired it at probate sale in December, 1862, from the estate of Stevens.	Nobody pretends that the sale to her was not regular, legal, and *bona fide*.	Nobody disputes the fact that the heirs of Stevens received and partitioned the proceeds of this sale among themselves five years before Mrs. Barkdull's pretended purchase.	Nobody disputes that Mrs. Barkdull and her attorney, and Dawson, the administrator, and H. H. Herbert, who did all this business for and in the name of his servant Harriet, all knew perfectly well that Mrs. Fluker owned and had continuously possessed this land since 1862.	Mrs. Barkdull held her two notes for the price and collected one of them.	Herbert was Mrs. Fluker's tenant.	Nobody pretended that these notes of Mrs. Fluker were debts of Mrs. Stevens. Yet, in the face of these facts, these parties enact the farce of putting up this property as belonging to the estate of Stevens, which had, five years before, sold, and received the price of it; and they tell us they did

so to pay Mrs. Fluker's note! Is it necessary for us to say or cite authority to show that such proceedings are absolutely void, and vested no title whatever in Mrs. Barkdull? If Mrs. Barkdull ever had the shadow of a title to that property, she did not get it by that sale from the estate of Stevens. We have seen that if she ever acquired a title from Mrs. Fluker she did so after plaintiff's mortgage had attached. But we have also seen that, *in fact*, she never derived or had any title from Mrs. Fluker. Even the parol evidence, illegally admitted, utterly fails to show that Mrs. Fluker ever sanctioned or knew of this transaction. But it is said the deed from the estate of Stevens to Mrs. Fluker was not put of record until 1870, and that of Harriet Herbert from Mrs. Barkdull was recorded in 1868, and that the oldest recorded title must prevail; that Mrs. Logan's mortgage could not attach until Mrs. Fluker's title was recorded, and that before it was recorded Mrs. Fluker had been divested of her title by the proceedings narrated above.

To this we answer, first, that Mrs. Fluker never was divested of title; and, second, that an unrecorded deed transfers the property to the purchaser just as effectually as a recorded deed, as against all the world, *except* creditors of the vendor, and *bona fide* purchasers from him without notice.

Mrs. Barkdull was neither a creditor of Mrs. Stevens (Mrs. Fluker's vendor) nor an innocent purchaser from her. She was no purchaser at all. One who has never been owner can not confer ownership upon another. Mrs. Barkdull never had any right of ownership, and could convey none to Harriet Herbert. The latter, besides, was herself, through her agent H. H. Herbert, perfectly cognizant of all the facts. She was therefore not even a possessor in good faith. Even if she were, good faith in a purchaser can not make a good title out of a bad one. The only effect of good faith is to shorten the period for acquiring title by prescription, and to entitle the party to fruits, and certain rights and indemnities for improvements.

The proposition of defendant's counsel that Mrs. Logan's mortgage could not attach to the land until Mrs. Fluker's title was recorded is utterly inadmissible. It attached the moment it was placed of record, because Mrs. Fluker was then the owner—and it was effective and good against every body that Mrs. Fluker's title was good against. We have seen that her title was, without registry, good against the world, except creditors of and *bona fide* purchasers from her vendor.

This view renders it unnecessary to decide the point raised by defendant, as to the effect of Mrs. Fluker's deed not being stamped, before its registry, since in our view the deed was good against the defendants Barkdull and Herbert without registry. But we may as well say now that we think the objection without force or merit.

Logan vs. Herbert.

The objection is made in the brief, but not in the pleadings (unless the exception "no cause of action" be its equivalent), that this is the hypothecary action, and that there is neither allegation nor proof of the demands and notices required by law in such cases.

We have stated the prayer of the petition. We do not think it is the hypothecary action. The petition does not ask for the seizure and sale of the property, but that the sale from Barkdull to Herbert be declared void, that the property, *quoad* the plaintiff's rights, be decreed to belong to Mrs. Fluker, and that it be decreed subject to plaintiff's judgment. Creditors are authorized by law to exercise the rights and actions of their debtors in cases like this. 2 An. 782. They are not barred or estopped from so doing by the acts or pleadings of their debtors, only when and to the extent that in such acts or pleadings the debtor may be considered as representing them. Now the debtor in so far as relates to creditors holding antecedent mortgages and their recourse upon the mortgaged property does not represent them, and judgment against such debtor is not *res adjudicata* as to such creditors; as it would be against mere ordinary creditors in the absence of fraud by the debtor. See Marcadé, v. 5, pp. 181–5; also, 9 L. 298; 4 R. 26; 3 A. 230; 6 A. 462; 12 A. 873.

The hypothecary action proceeds upon the hypothesis that there has been *a real alienation* of the property *by the mortgage debtor*. This suit proceeds upon *the contrary hypothesis*, and as the decrees of this court holding Mrs. Fluker to be estopped from claiming title are not *res adjudicata* against plaintiff, plaintiff may show that those decrees are unfounded, unjust, and untrue. Mrs. Logan could, it is true, have acquiesced in the validity of defendant's title, originating in the adjudged divestiture of Mrs. Fluker in 1868, *and still have maintained* the hypothecary action, as that title originated subsequent to the attaching of her mortgage. But she has also the right to have this adverse title, which is set up as a hindrance to the exercise of her right, adjudged null and void as to her, to the end that she may seize and sell it as the property of her debtor.

Nor must plaintiff's action be confounded with the revocatory action, technically so called. That action has for its object the annulment of acts and contracts made by the debtor in fraud of the rights of creditors. Plaintiff in this case does not pretend any such state of facts. On the contrary, she asserts that her debtor never did, in truth and fact, sell or dispose of this property; that she was rather the victim than the perpetrator of illegal and wrong doing. We have seen that while Mrs. Fluker's mouth is judicially sealed, and while she is not permitted to gainsay Harriet Herbert's title, the plaintiff is at liberty to dispute it, and to show that it never had a legal existence. We think the plaintiff

Logan vs. Herbert.

has made out her case, and that as to her defendant's title is null and void, and that plaintiff has the right to proceed against said property as that of her judgment debtor, for the satisfaction of her mortgage rights. Under the views we take the prescription of one and five years pleaded by Mrs. Barkdull against plaintiff is inapplicable.

The defendant has prayed for judgment over *against her warrantor* for the amount and price paid, $500, and for the improvements put upon the place. The evidence as to improvements is not sufficiently definite for us to pass intelligently upon their value. We will reserve defendant's rights in that regard against her warrantor, who, she alleges, is liable to her therefor.

It is therefore ordered, adjudged, and decreed by the court that the judgment appealed from be avoided and reversed, and it is now ordered, adjudged, and decreed that there be judgment in favor of Mrs. S. C. F. Logan and against the defendants, declaring the title of Harriet Herbert, derived from Mrs. L. P. Barkdull, of date seventh March, 1868, to the lands described in plaintiff's petition to be null and void as regards plaintiff. That the plaintiff, Mrs. Logan, do proceed to the execution of the judgment in the case of " Kernan & McVea vs. Mrs. J. A. Fluker," No. —, on the docket of the district court for East Feliciana, to all intents and purposes as though said Mrs. Fluker's estate was still owner and possessor of the said land, and that the same be and is declared subject to plaintiff's judicial mortgage resulting from the registry of said judgment on twenty-third February, 1867. It is further ordered that plaintiff recover of the defendants the costs of both courts. It is further ordered, adjudged, and decreed that the defendant, Harriet Herbert, do recover of her warrantor, Mrs. L. P. Barkdull, the sum of five hundred dollars as the price of said land, with five per cent interest from judicial demand till paid, and all costs of this suit; and that said Herbert's right to sue said warrantor for damages and improvements be and the same is reserved to her.