Frank J. CORIGLIANO, Petitioner,

v.

CATLA CONSTRUCTION CO., Inc., M. Melnick & Co., Inc., Crown Pneumatic Tool Co., Inc., and United States of America, Respondents.

United States District Court
S. D. New York.

June 15, 1964.

Spencer V. Hinckley, New Rochelle, N. Y., for petitioner.

Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, for respondent United States, John R. Horan, Asst. U. S. Atty., of counsel.

Frank & Ross, New York, N. Y., pro se.

FREDERICK van PELT BRYAN, District Judge.

This special proceeding pursuant to New York Civil Practice Law and Rules, § 5225(b),[1] was commenced in the Supreme Court, Bronx County. It was removed to this court by respondent United States pursuant to 28 U.S.C. § 1444.

Petitioner Corigliano is a judgment creditor of respondent Catla Construction Company (Catla). Catla Construction Company is in turn a judgment creditor of respondent M. Melnick & Co. (Melnick). Corigliano as judgment creditor of Catla seeks to compel Melnick to pay directly to him the amount of its indebtedness to Catla in partial satisfaction of Catla's judgment debt to Corigliano. Corigliano has also joined as respondent the United States, which claims the indebtedness owing from Melnick to Catla under federal tax liens against Catla. Messrs. Frank & Ross, attorneys for Catla in the action brought by Catla against Melnick, though not named as respondents, have also appeared in this action, claiming that they have a perfected attorney's lien against the judgment which takes precedence over all other liens.[2]

The chronology of relevant events in this case is as follows:

1. August 3, 1962: Corigliano recovered judgment against Catla and another party in the sum of $6,717.00, of which $6,627.50 still remains unsatisfied.

---

1. Although this proceeding probably should have been brought under § 5227 rather than § 5225(b), none of the parties has raised this objection. In any case, Rule 54(c), F.R.Civ.P. requires that the prevailing party should be granted the relief to which he is entitled even if he has not demanded such relief in his pleading.

2. Crown Pneumatic Tool Company, a subsequent judgment creditor of Catla is also named as respondent but has not been served, apparently because it is no longer in business. Whatever rights it may have, however, are plainly subordinate to those of the respondents who have been served and no one has questioned its absence here.

2. August 10, 1962: Execution against the property of Catla was delivered to the Sheriff of Bronx County by Corigliano with a specification pursuant to former Section 687–a of the New York Civil Practice Act calling for levy on a debt owed to Catla by Melnick.

3. August 29, 1962: Corigliano served upon Melnick a third party subpoena pursuant to former Section 779 of the Civil Practice Act, containing an order pursuant to former Section 781 restraining Melnick from paying over its indebtedness to Catla until the further order of the court for a period of two years.

4. September 4, 1962: Corigliano examined Melnick in supplementary proceedings as a third party. Melnick denied owing any money to Catla.

5. September 20, 1962: The United States filed a notice of tax liens against Catla in the amount of $13,898.98.

6. September 1963: Catla, by its attorneys Frank & Ross, commenced an action against Melnick in the Supreme Court, New York County.

7. December 1963: Judgment granted in favor of Catla against Melnick in the sum of $1,250 with interest and costs.

7. December 23, 1963: Corigliano delivered to the Sheriff of Bronx County an execution with notice to garnishee pursuant to N.Y.Civ.Prac.L.R. § 5232(a). This execution contained a specific direction for levy on Catla's judgment against Melnick for $1,250.00 plus interest and costs. It was served on Melnick.

8. January 7, 1964: Judgment for $1,499.75 entered in favor of Catla and against Melnick in the Supreme Court, New York County.[3]

9. January 9, 1964: Corigliano commenced this supplementary proceeding.

The judgment recovered by Catla against Melnick was for work done under a construction subcontract between the two parties, dated June 29, 1962. The judgment enforces the indebtedness from Melnick to Catla which Corigliano levied upon on August 10, 1962, and specified in his third party subpoena with restraining order served on Melnick on August 29, 1962. Although the status of the work under Catla's subcontract with Melnick at the time that the third party subpoena was served does not appear, apparently there was no work done on the subcontract after that date; and the indebtedness must have arisen prior thereto.

The facts are undisputed and there are no issues which require trial.

1. *The competing claims of Corigliano and the United States.*

Corigliano bases his claim of right to payment of Catla's judgment against Melnick on a statutory judgment creditor's lien created under the laws of New York. He asserts that this lien arose on August 29, 1962, when he served a third party subpoena in supplementary proceedings with a restraining order upon Melnick.

The United States bases its claim of right on a statutory tax lien under § 6321 of the Internal Revenue Code of 1954, 26 U.S.C. § 6321. Under § 6322 that lien arose when the assessment of taxes was made against Catla. However, § 6323 provides that such lien "shall not be valid as against any * * * judgment creditor until notice thereof has been filed by the Secretary or his delegate." Here the requisite notice of tax lien was not filed until September 20, 1962, some three weeks after Corigliano had served his third party subpoena upon Melnick. Nevertheless, the Government claims that its lien is prior to that of Corigliano.

When priority of a federal tax lien is asserted as against a state-created lien, state law determines the existence and characteristics of the state lien, but federal law sets the standards for priority. United States v. Pioneer Amer. Ins. Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed. 2d 770 (1963); United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955). In particular, federal law determines whether the status of judgment creditor within the meaning of § 6323 of the Internal Revenue Code was attain-

3. The judgment was docketed on January 17, 1964.

ed before notice of the federal tax lien was filed. United States v. Acri, *supra*; United States v. Gilbert Associates, Inc., 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1953).

■ To qualify as a judgment creditor protected by § 6323 not only must judgment have been recovered against the taxpayer, but a lien must also have been obtained on the property of the taxpayer against which priority is claimed. Treas. Reg. § 301.6323–1(a) (2) (i) (b) (1955); Miller v. Bank of America, N. T. & S. A., 166 F.2d 415 (9 Cir. 1948); Beeghly v. Wilson, 152 F.Supp. 726 (N.D. Iowa 1957); United States v. Ruby Luggage Corp., 142 F.Supp. 701 (S.D.N.Y. 1954); United States v. Levin, 128 F. Supp. 465 (D.Md.1955); United States v. Fisher, 93 F.Supp. 73 (N.D.Cal.1948). The Government makes no claim that under New York law the service of the third party subpoena with restraining order on Melnick did not give Corigliano a lien on the debt owed to Catla as of August 29, 1962, or that Corigliano's lien has lapsed or been discharged by subsequent events. Its claim is that Corigliano's lien was not sufficiently "choate" to be effective against its tax lien.[4]

■ As a matter of federal law, a competing state-created lien does not arise so as to take priority over a federal tax lien until it has attached to the property against which it is asserted and become "choate." A lien is "choate" "when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." United States v. Pioneer Amer. Ins. Co., *supra*, 374 U.S. at 89, 83 S.Ct. at 1655; United States v. City of New Britain, 347 U.S. 81, 84, 74 S.Ct. 367, 98 L.Ed. 520 (1954).

The Government contends that the property subject to Corigliano lien in

this case was not "established" until judgment was recovered against Melnick by Catla because until that time the amount of the indebtedness and, indeed, its very existence were disputed. If this contention is well founded, Corigliano is not protected by § 6323 since he would not have obtained the "choate" lien necessary to constitute him a judgment creditor until after the Government had filed its notice of tax lien. See Ersa, Inc. v. Dudley, 234 F.2d 178 (3 Cir. 1956); United States v. Levin, *supra*.

This is a novel position which the Government is forced to take here because of its own revenue ruling that, in New York, the service of a third party subpoena with restraining order constituted the lienor a judgment creditor under the predecessor of § 6323.[5] Rev.Rul. 54–125, 1954–1 Cum.Bull. 282; see In re Airmont Knitting & Undergarment Co., 182 F.2d 740 (2 Cir. 1950); United States v. Ruby Luggage Corp., *supra*; Wickwire Spencer Steel Co. v. Kemkit Scientific Corp., 292 N.Y. 139, 54 N.E.2d 336, 153 A.L.R. 208 (1944). Thus, in urging that Rev. Rul. 54–125 is not applicable to a debt whose amount or existence is disputed, the Government essentially takes the position that a lien cannot be "choate" unless the property to which it is attached is "choate" as well.

The short answer to this contention is found in Crest Finance Co. v. United States, 368 U.S. 347, 82 S.Ct. 384, 7 L.Ed. 2d 342 (1961). The court below had given priority to a federal tax lien over an unrecorded but otherwise fully perfected state lien upon accounts receivable on the ground that the latter lien was "inchoate." In its brief at p. 6 the Government conceded that the lien was in fact choate:

"That the amount owing to the taxpayer by Standard for the work

---

4. The Goverment does not claim that Catla is insolvent. Thus, the federal priority-in-insolvency statute, 31 U.S.C. § 191, and its more rigorous standards of choateness are not applicable. United States v. Vermont, 84 S.Ct. 1267 (June 1, 1964).

5. Since levy of execution is not a prerequisite to the issuance of a third party subpoena with restraining order, Utilities Engineering Institute v. Mangan, 276 App.Div. 922, 94 N.Y.S.2d 244 (2d Dept. 1950), the lapse of Corigliano's original levy did not affect the continuing validity of the lien created by the subpoena.

performed was, at the date of the tax assessment, still subject to final computation and revision does not, we believe, affect the definiteness or specificity of the petitioner's lien. The property subject to the lien was the specific right to payment for work performed, and the indefiniteness of the amount due for that work goes, not to the definiteness of the lien (which was for the liquidated amount of the notes evidencing the loans from petitioner to the taxpayer), but to the value of the property subject to the lien. Just as a mortgage on real estate is not made inchoate because the value of the property (or even the mortgagor's title to it) is uncertain, so the petitioner's lien on the taxpayer's contractual right to payment for work performed is not made inchoate because the amount payable on the assigned right has not been finally ascertained. The requirement of definiteness of amount goes only to the debt secured by the lien, not to the property (otherwise specifically identified) that is subject to the lien."

The Supreme Court agreed, granted certiorari and vacated the judgment below per curiam.

█ The passage quoted from the Government's brief correctly states the law. The Crest Finance case forecloses its contention in the case at bar. The holding of that case is in essence that the requirement of choateness does not relate to the property against which a state lien is asserted but only to the lien itself. A state-created lien is not inchoate merely because the amount or value of the liened property has not been finally determined.

█ Here, as in the Crest Finance case, the property to which the Corigliano lien attached—the right of Catla to payment for work already performed under its sub-contract with Melnick—was specifically identified. The fact that the amount due from Melnick had not been finally determined did not affect the definiteness or specificity of the lien.

Corigliano is plainly identified as the lienor. The amount of his lien was fixed by the judgment he recovered against Catla. The Corigliano lien is fully choate under the standards of the Pioneer American Insurance Company case (supra, p. 248) and is a valid judgment creditor's lien enforceable under § 6323 as against the subsequent tax lien asserted by the Government.

2. *The competing claims of Frank & Ross and the United States.*

The judgment entered in favor of Catla and against Melnick in the sum of $1,499.75 provided that out of that sum Messrs. Frank & Ross, attorneys for the plaintiff Catla, should "have a prior lien in the amount of $625 as and for their lawful fee herein and the defendant M. MELNICK & CO., INC. is hereby directed to pay said sum directly to said attorneys." As already indicated, Messrs. Frank & Ross were not named as respondents in this proceeding but appeared on the motion for summary judgment and submitted papers in support of their attorney's lien. In practical effect Messrs. Frank & Ross sought to intervene in this proceeding for the purpose of protecting their lien. Their papers in opposition will be treated as an application for intervention, which is granted, and they will be considered as parties respondent herein and as such parties respondent to have made a cross-motion for summary judgment pursuant to Rule 56 (b), F.R.Civ.P. In that posture of the case questions arise as to the respective priorities as between Frank & Ross and the Government to the Catla judgment against Melnick as well as questions as to the respective liens of Frank & Ross and Corigliano against that judgment.

██ Since the Corigliano lien is in all respects prior to that of the Government it is unnecessary to determine the priorities as between Frank & Ross and the Government under federal law as would normally be done. The Corigliano lien is well in excess of the Catla judgment against Melnick and thus, for practical purposes, the Government has no

rights as junior lienor. In such circumstances the Government's claim of lien drops out of the case, and the ultimate disposition of the property among the remaining state lienors is determined under state law despite the fact that a lienor otherwise subordinate to the Government under federal law may be entitled to enforce his lien under state law. See United States v. City of New Britain, supra, 347 U.S. at 88, 74 S.Ct. 367; In re Lieb Bros., Inc., 251 F.2d 305 (3 Cir. 1958) (per curiam); Exchange Bank & Trust Co. v. Tubbs Mfg. Co., 246 F.2d 141 (5 Cir.), cert. den. City of Dallas, Tex. v. Tubbs Mfg. Co., 355 U.S. 868, 78 S.Ct. 118, 2 L.Ed.2d 75 (1957); Kennedy, "The Relative Priority of the Federal Government," 63 Yale L.J. 905, 927–28 (1954); Note, "Federal Priorities and Tax Liens," 63 Col.L.Rev. 1259, 1284–85 (1963). The net result is that the Government is no longer able to assert any priority over Frank & Ross as to the Catla judgment against Melnick because that judgment has been completely swallowed by the Corigliano lien, and the Government no longer has any interest therein.

### 3. *The competing claims of Frank & Ross and Corigliano.*

There remains only the question of whether under state law the Frank & Ross attorney's lien takes priority over the Corigliano lien given the circumstances here.

Under § 475 of the New York Judiciary Law an attorney "who appears for a party has a lien upon his client's cause of action * * * which attaches to a * * * judgment or final order in his client's favor * * *." The statute provides that the attorney has this lien "from the commencement of an action." There is no provision for the priority of the attorney's lien other than proscription that "the lien cannot be affected by any settlement between the parties before or after judgment * * *."

Corigliano's judgment creditors lien arose on August 29, 1962, when the third party subpoena with restraining order was served on Catla. The attorney's lien of Frank & Ross, as fixed in the Catla judgment against Melnick, relates back to the commencement of that action in September 1963. Thus, in terms of time alone, Corigliano's lien was prior to that of Frank & Ross.

■ However, where an attorney's lien is involved time alone is not necessarily the decisive factor. The New York courts have shown great reluctance to permit attorneys whose efforts have created the fund that is the object of conflicting claims to be deprived of the fruits of their labors by mere technical and time considerations. See, e. g., Beecher v. Peter A. Vogt Mfg. Co., 227 N.Y. 468, 125 N.E. 831 (1920); Application of Peters, 271 App.Div. 518, 67 N.Y.S.2d 305 (3d Dept.1946), modified per curiam in other respects, 296 N.Y. 974, 73 N.E.2d 560 (1947); Bacon v. Schlesinger, 171 App.Div. 503, 157 N.Y.S. 649 (1st Dept.1916), aff'd per curiam, 224 N.Y. 690, 121 N.E. 854 (1918).

This case is particularly appropriate for recognition of an attorney's lien despite considerations of time.

■ Corigliano took no action whatsoever to enforce his judgment from September 4, 1962, when he examined Melnick in supplementary proceedings, until December 23, 1963, when he delivered to the sheriff his second execution with notice to garnishee against Melnick. He did not apply for the appointment of a receiver to prosecute the action against Melnick pursuant to former § 804 of the Civil Practice Act or for permission to do so himself pursuant to § 795. He even allowed his original levy of execution of August 10, 1962, to lapse by not bringing an action to enforce it within 120 days. N.Y.Civ.Prac.Act § 687–a(7); Personeni v. Aquino, 5 App.Div.2d 616, 174 N.Y.S. 2d 22 (1st Dept.1958) (per curiam), aff'd, 6 N.Y.2d 35, 187 N.Y.S.2d 764, 159 N.E. 2d 559 (1959); Davis & Warshow, Inc. v. S. Iser, Inc., 30 Misc.2d 528, 220 N.Y.S. 2d 818 (Spec.T., N.Y.County 1961). It was not until Catla had been awarded judgment against Melnick as a result of

the professional services of its attorneys that Corigliano took steps to obtain payment of his lien.

Whatever the rights of the parties would have been if Catla had attempted to commence his action immediately after the service of the execution on him and the third party subpoena on Melnick, compare Application of Lubin, 213 N.Y. S.2d 143 (Spec.T., Kings County 1961) (judgment debtor restrained), it is clear that the New York courts would hold that by September 1963 Corigliano had acquiesced in the prosecution of the suit in the ordinary course by Catla. Thus, in Herlihy v. Phoenix Assur. Co., 274 App.Div. 342, 83 N.Y.S.2d 707 (3d Dept. 1948), the court dealt with a similar situation in the following language:

> "In the instant matter the governmental lienors stood by knowing that litigation was necessary if the choses in action were to produce proceeds upon which the tax liens could attach. They acquiesced in the bringing and prosecution of the actions by the insured all the while knowing that petitioner's services were a necessary expense, and charged with notice of his lien therefor upon his client's causes of action and their resultant proceeds. It would indeed be inequitable to allow, as is called for, that the entire fund, produced by petitioner's services, be applied toward the payment of the tax liens, and leave the laborer go without his hire. Such would be an unwarranted disposal of his equitable ownership of the portion which amounts to his charging lien."

Cf. Lexow v. Tremaine, 252 App.Div. 307, 299 N.Y.S. 412 (3d Dept. 1937), aff'd per curiam, 277 N.Y. 657, 14 N.E.2d 207 (1938). Corigliano, who acquiesced in the prosecution of the suit against Melnick and necessarily also in the retention of Frank & Ross, cf. Jackson v. City of New York, 182 Misc. 686, 45 N.Y.S.2d 505 (Spec.T., N.Y.County 1943), has little cause to complain that it cannot appropriate the fund created by the attorneys without allowing them to be compensated for their efforts which made it possible for him to realize on it. Surely Corigliano would not be able to claim the judgment free of any charge for court costs. He must take it as he finds it, expressly subject to and charged with the attorney's lien of Frank & Ross.

Frank & Ross thus have a first claim on the judgment against Melnick for $625, and their motion for summary judgment to that effect is accordingly granted. For the reasons already stated, Corigliano is entitled to the balance of the judgment against Melnick despite the tax lien of the Government, and his motion for summary judgment is accordingly granted to that extent.

Settle order directing entry of judgment accordingly on notice.