AIDA INÉS FERNÁNDEZ RIVERA ET AL., Petitioners, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, J. M. CALDERÓN, JR., JUDGE, Respondent.

No. C-64-42.     Decided June 14, 1966.

*Carlos D. Vázquez* for petitioners. *Ángel S. Pérez González* for intervener José González Benítez.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

On *June 14, 1961*, Aida Inés Fernández Rivera, accompanied by her husband, Carmelo Millán Lugo, appeared before Notary Ángel S. Pérez González and executed mortgage

deed No. 48 of said notary's protocol for the year 1961, in favor of the bearer or holder by endorsement of a promissory note for the amount of $16,000, maturing on June 14, 1964 with interest at the rate of 8% from the date of execution to the date of maturity or full payment and an additional amount of $1,600 for costs, expenses and attorney's fees in the event of judicial claim, and an additional amount for taxes, insurance, or any other expenses that may be incurred by the bearer or holder as a result of the obligor's nonperformance. In the event of any mortgage foreclosure the mortgaged property is valued at $16,000. Said mortgage was recorded on June 30, 1961 in the Registry of Property of San Juan, Puerto Rico, at volume 157, back of folio 125 of South Santurce, property No. 20, 27th entry, and with the exception of a notice of lis pendens and attachment in favor of Diego Portalatín Vélez, the effectiveness of which is no part of the question in issue, the above-described mortgage in favor of the note to bearer or holder was at that time the first lien recorded on the mortgaged property.

As alleged in this petition for certiorari, on *December 27, 1961* the Director of Internal Revenue of the Department of Finance of the United States of America, under the authority conferred upon him by §§ 6321, 6322, and 6323 of the Federal Internal Revenue Code, filed in the Office of the Clerk of the United States District Court for the District of Puerto Rico (federal court), an attachment against the property of Aida Inés Fernández.

On *November 1, 1962*, alleging to be the holder of the mortgage note referred to, and the noncompliance with the interest clause, José González Benítez, plaintiff in civil case No. 65–8076 of the Superior Court of Puerto Rico, San Juan Part, where this proceeding originated, brought an action in said court for the ordinary foreclosure of the mortgage which secured his promissory note. On the other hand, on

January 24, 1963, the Government of the United States of America by action taken by the Internal Revenue Director, published in the newspaper El Mundo, of San Juan, Puerto Rico, that on February 4, 1963 he will proceed to sell at public auction, in order to foreclose a federal tax lien created by the attachment levied pursuant to §§ 6321, 6322, and 6323 of the Internal Revenue Code of the United States of America, the same property object of the ordinary foreclosure proceeding instituted by José González Benítez, the holder of the mortgage promissory note. Outcome: *on February 4, 1963* said property was adjudicated to Arturo Palacios, one of the petitioners in this petition for certiorari, it seems for the amount of $500 and *on June 24, 1963* the same property was adjudicated to the Talcott Inter-American Corp. for the amount of $22,000.

As it is alleged, on June 11, 1963, the mortgagor, Aida Inés Fernández Rivera, filed, within the ordinary foreclosure proceeding in the Superior Court, San Juan Part, a motion to set aside the judgment on the following grounds: (a) That the court ordered the increase in the upset price of the auction sale from sixteen thousand to twenty-two thousand dollars, without defendant's consent and by default judgment entered in her absence; (b) the nullity of the foreclosure decree because the clerk included therein certain amounts which the mortgagor was not ordered to pay in the judgment, such as: 1—full amount for taxes, insurance, and other expenses not owed; 2—the full amount of $1,600 for default interest; and 3—interest at the rate of 8% after judgment was entered, not ordered by the court and illegal, even if it had been ordered. On his part, Arturo Palacios, the purchaser at the federal auction sale, filed, within the same proceeding in the Superior Court of Puerto Rico, San Juan Part, a motion to annul the auction sale because it was not proper to auction a property belonging to him and not

to the mortgagors, since four months before the auction sale, without making him a party in the proceeding.

First, we must solve the apparent conflict of authority and different manner of disposing of the property in case of a federal tax lien and of a mortgage to secure a debt or a credit constituted pursuant to the Mortgage Law of Puerto Rico and recorded in our Registry of Property. Section 6321 of the United States Internal Revenue Code— 26 U.S.C.A. § 6321 at p. 437 (1955) and Cum. Supp. of 1965 at p. 158—provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." Section 6322 of the same statute provides: "Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time." Section 6323, on its part, establishes: (A) "Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate: (1) In the office designated by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law designated an office within the State or Territory for the filing of such notice. [As we know, in Puerto Rico, since June 13, 1964, the notices of delinquent federal taxes shall be recorded in the Registry of Property of the district where the property affected is located. Act No. 54 of June 13, 1964.] (2) In the office of the clerk of the United States district court for the judicial district in

which the property subject to the lien is situated, whenever the State or Territory has not by law designated an office within the State or Territory for the filing of such notice. . . . (b) If the notice filed pursuant to subsection (a)(1) is in such form as would be valid if filed with the clerk of the United States district court pursuant to subsection (a)(2), such notice shall be valid notwithstanding any law of the State or Territory regarding the form or content of a notice of lien. . . ."

At first sight the provision of § 6323, to the effect that "the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate," gives the impression that the record of said notice is sufficient for any priority in the liens established pursuant to the state laws to yield to the federal tax lien.

■ It was never the intention of Congress to assert the priority of the federal lien by rendering ineffective all prior guarantees of the state juridical business. The rule imposed by the wording of § 6321 was to determine the priority of the federal lien or the state lien, the test being which of the two liens had been perfected first (choate lien rule). As we have seen, the federal tax lien was perfected by the mere notice from the registry of the imposition of said lien in the office designated by the state or territory for the registration of said liens or in the office of the clerk of the United States District Court in case there did not exist such office. As to the date on which the lien created by state legislation was perfected, each case was governed by the provisions of the corresponding statute. There exists a variety of circumstances in which it is not easy to determine the priority of one or the other lien, since although we are dealing with prior registrations pursuant to the local law, the birth of the guaranteed right is subsequent to the registration

of the federal lien. Hence, the origin of this copious and not so orderly jurisprudence which deals with the "choate lien" and "inchoate lien," referring to letters of credit with open end mortgage guarantee, to chattel mortgages or collateral guarantees to secure the payment in the future of money advances or instalments which future payments will be made after the notice of record of the federal tax lien (inchoate lien).

But seeking the greatest reciprocity of interest in a situation which could be burdensome to the state or territorial economy, the decisions of the Supreme Court of the United States as well as of the circuit courts and the supreme courts of the different states, started to elaborate the three principles of exception to support the priority of state liens: (1) When the lienors and other claimants could establish that the property, object of the federal lien, was not the taxpayer's property; (2) where a prior lien, specific and perfected was claimed with a right to precedence under the common law rule that: "the first in time is the first in right" and (3) as long as a federal lien is unfiled, the lienors and other claimants may seek to bring themselves within the four classes of creditors—mortgagee, pledgee, purchaser or judgment creditor—specifically protected by the statute itself.

In the case of *United States* v. *City of New Britain*, 347 U.S. 81, 85-86, 98 L.Ed. 520, 525-26 (Minton) (1954), the writer of the opinion speaking on behalf of a unanimous court stated: "We believe that priority of these statutory liens is determined by another principle of law, namely, 'the first in time is the first in right.' As stated by Chief Justice Marshall in *Rankin* v. *Scott* [US] : 'The principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction, out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a Court of law or equity to a subsequent claimant.' This

principle is widely accepted and applied, in the absence of legislation to the contrary. [Citations.] We think that Congress had this cardinal rule in mind when it enacted § 3670 [former numeration], a schedule of priority not being set forth therein. Thus, the priority of each statutory lien contested here must depend on the time it attached to the property in question and became choate." See also: Annotation: *Priority of Federal Taxes*, 2 L.Ed.2d 1823, 1826 (1958) ; *Southern Railway Company* v. *United States*, 306 F.2d 119, 125–127 (Brown) (1962) ; Second Annotation: *Priority of Federal Tax Liens*, 7 L.Ed.2d 904, 906 (1962) ; Annotation: *Priority as between federal tax lien and mortgage*, 90 A.L.R.2d 1179, 1180–1181 (1963) ; *Corigliano* v. *Catla Construction Co.*, 231 F.Supp. 245, 248–250 (Van Pelt Bryan) (1964), *United States* v. *Lebanon Woolen Mills Corporation*, 241 F.Supp. 393, 395–401 (Connor) (1964), Annotation: *Federal Tax Liens*, 94 A.L.R.2d 748, 750–751 (1964) ; *Exchange Bank & Trust Co.* v. *Tubb Manufacturing Co.*, 246 F.2d 141, 143–144 (Hutchinson) (1957).

■ This being so it is unquestionable that in Puerto Rico a mortgage duly recorded in our Registry of Property on a prior date is entitled to priority over any federal tax lien subsequently recorded.

The second aspect of the question is that which refers to the nullity of the auction sale because there were included amounts which if authorized by the mortgage deed were not owed at the time of the sale. According to the mortgage deed the mortgaged property secured $16,000 principal, a separate amount for interest up to $1,600, an additional amount for attorney's fees and costs of the proceedings up to $1,600 and another additional credit for taxes, insurance or any other expenses related to the mortgaged property, that is, a mortgage lien of $20,800 and a homestead exemption up to $1,500. However, the property liable for all that mortgage

lien which enjoyed foreclosure exemption, was assessed, for the purpose of the first auction sale, in only $16,000.

█  In his findings of fact Judge J. M. Calderón, Jr. settled the credit, to the extent that could be settled prior to the auction, as follows: "Defendants have not paid the principal nor the interests up to this date; six consecutive installments are due and unpaid at the time of the filing of the complaint which amount to six hundred and thirty-nine dollars and ninety-six cents ($639.96). Likewise defendants have failed to pay the interests due since the filing of the complaint on November first, nineteen hundred and sixty-three, up to the present month of March, nineteen hundred and sixty-three; which amount to five hundred thirty-three dollars and thirty cents ($533.30). Defendants owe plaintiffs the following sums past due, liquid and demandable:  (a)  sixteen thousand dollars ($16,000), the principal;  (b)  six hundred thirty-nine dollars and ninety-six cents ($639.96) corresponding to the interest of six installments due and unpaid prior to the filing of the complaint;  (c)  five hundred thirty-three dollars and thirty cents ($533.30) for unpaid interest from the filing of the complaint up to the current month of March nineteen hundred and sixty-three which amount to the liquid and demandable amount of seventeen thousand one hundred seventy-three dollars and twenty-six cents ($17,173.26)." On our part we can add two items which are liquid per se: $1,600 for the additional credit for costs, expenses, and attorney's fees, $1,500 for homestead exemption in case of a forced sale under Act No. 1 of February 11, 1955—31 L.P.R.A. § 1851 Supp. 1965, p. 94. The three amounts add up to a total of $20,273.26. As to the other additional credit of $1,600 for the payment of taxes, insurances, or any other expenses the holder or mortgage creditor may incur on account of the mortgagors, there is in the record a certificate of a tax

debt, signed by the Collector of Internal Revenue of San Juan, of receipts already in collection for $891.72 and of a pending receipt of $396.24, which amounts to $1,287.96. Adding this credit for property taxes to the preceding amount of $20,273.26 the result amounts to $21,561.22 for mortgage credits for contracts and legal mortgages against the property. Mr. Judge J. M. Calderón, Jr. did not err in not fixing the upset price in the amount of $16,000 agreed upon, but in a sufficient amount to cover the mortgage debt in full, $22,000. It is rather curious that the person who is most benefited by the higher liquidation in this case, the mortgagor, is the person who challenges the same.

■ Petitioner, Aida Inés Fernández Rivera, complains of the increase in the price without her authorization. But she forgets that after being summoned she abandoned the litigation and her attorney withdrew the representation he had been given. The question remained then in the hands of the foreclosing party and the court. To increase the price of the auction sale rests on the discretion of the interested parties, especially in an ordinary foreclosure proceeding. Let us hear Roca Sastre: "The price fixed as the amount of the auction sale should consist of the remainder after subtracting from the real value of the property the amount for the charges and liens which will subsist. In practice this rule is often forgotten. Obviously, failure to do so has its certain advantage provided that at the time of the foreclosure a previous mortgage has been cancelled; but the parties may establish different amounts for the auction sale, combined with the disappearance of preferred liens. May the interested parties subsequently modify, by mutual agreement, the price fixed? This may be convenient where the surrounding circumstances are such that the price fixed when the mortgage was constituted has become fictitious. There seems to be no difficulty in permitting it, since this modification presupposes

624

no alteration in the conduct of the proceeding—which § 129 of the law forbids—for this is a matter left to the discretion of the parties." IV Roca Sastre—*Derecho Hipotecario* 830 (5th Bosch ed. 1954). The permissive rule would be even more applicable in Puerto Rico, since in our country the foreclosure proceeding is not governed by the Mortgage Law, but by the provisions of Civil Procedure in relation to the manner of executing the judgments.

■ The legality of the ordinary foreclosure proceeding having been thus decided we believe that in this case there should only subsist the claim of intervener Arturo Palacios, in case there is any excess from the auction price, up to the amount he has paid for the auction of the property in the Office of the Clerk of the District Court of the United States for the District of Puerto Rico, and petitioner's claim as to homestead for which the foreclosed property is always liable. The rest of the claims are dismissed and the judgment of March 18, 1963 and the order of May 1, 1964 will be affirmed.