UNITED STATES *v.* PIONEER AMERICAN
INSURANCE CO. ET AL.

No. 405.   Argued April 17, 1963.—Decided June 10, 1963.

*Richard M. Roberts* argued the cause for the United
States.   On the brief were *Solicitor General Cox, Acting
Assistant Attorney General Jones, Daniel M. Friedman,
Joseph Kovner* and *George F. Lynch.*

*Owen C. Pearce* argued the cause for respondents.
With him on the brief was *Marcus Ginsburg.*

*H. Cecil Kilpatrick, Samuel E. Neel* and *William F.
McKenna* filed a brief for the Mortgage Bankers Associa-
tion of America et al., as *amici curiae,* urging affirmance.

MR. JUSTICE WHITE delivered the opinion of the Court.

The United States has sought review of a decision of
the Supreme Court of Arkansas subordinating the federal
tax lien (26 U. S. C. § 6321) to a lien for attorney's fees
included in an antecedent mortgage contract.   235 Ark.
267, 357 S. W. 2d 653.   Because of conflict between the
Arkansas decision and *United States* v. *Bond,* 279 F. 2d
837 (C. A. 4th Cir.); *In re New Haven Clock & Watch
Co.,* 253 F. 2d 577 (C. A. 2d Cir.); we granted certiorari.
371 U. S. 909.

When the taxpayers in 1958 acquired their interest in the parcel of real estate involved here, they assumed liability on a note and the deed of trust (first mortgage) securing it, which were held by respondent Pioneer American Insurance Company. The note obligated taxpayers "in the event of default herein and of the placing of this note in the hands of an attorney for collection, or this note is collected through any court proceedings, to pay a reasonable attorney's fee." [1] The taxpayers at the same time executed a note and second mortgage to their vendor, respondent The Development Company, and subsequently, in April 1960, the real estate became burdened again with a mechanic's lien in favor of Alfred J. Anderson.

In October of 1960, taxpayers defaulted on the first mortgage monthly installment and failed thereafter to

---

[1] The deed of trust provided, in addition:

"That if either the party of the second part [trustee] or the party of the first part [mortgagor] shall become a party to any suit or proceeding at law or in equity in reference to its interest in the premises herein conveyed, the reasonable costs, charges and attorney's fees in such suit or proceeding shall be added to the principal sum then owing by the party of the first part and shall be secured by this instrument, and the note secured hereby shall, at the option of the holder, become due and collectible.

"The proceeds of any sale under this deed of trust shall be applied . . . as follows:

"First: To pay the costs and expenses of executing this trust, and any and all sums expended on account of costs of litigation, attorney's fees, ground rents, taxes, insurance premiums, or any advances made or expenses incurred on account of the property sold, with interest thereon.

"Second: To retain as compensation, a commission as set forth by the laws of the State of Arkansas.

"Third: To pay off the debt secured hereby, including accrued interest thereon, as well as any other sums owing . . . pursuant to this instrument."

meet payments as they fell due. On March 24, 1961, Pioneer American filed a suit to foreclose its mortgage and sought, in addition to the principal and interest, a reasonable attorney's fee. The United States was named a party defendant because of two outstanding federal tax liens against the taxpayers which were filed on November 29, 1960, and January 30, 1961. The United States admitted its liens were subordinate to the principal and interest on the first and second mortgages but claimed that the liens were superior to the claim for the attorney's fee. Three additional federal tax liens subsequently were filed on April 14, July 17, and October 3, 1961.[2]

On November 15, 1961, the Chancery Court entered its decree of foreclosure which fixed the attorney's fee at $1,250 and determined the priority of the various claimants. After satisfaction of court and foreclosure sale costs, Pioneer American was accorded first priority for principal, interest and the attorney's fee; The Development Company took next on principal and interest under the second mortgage; Alfred J. Anderson shared thereafter on his mechanic's lien and the United States took last. The property was sold and proceeds were received which satisfied all claims except $3,615.28 of the federal tax liens.[3] The United States appealed to the Supreme Court of Arkansas asserting that it was entitled to priority

[2] The federal tax liens, as of the date of the order of distribution, November 15, 1961, were as follows:

| | |
|---|---:|
| Lien of November 29, 1960 | $659.67 |
| Lien of January 30, 1961 | 1,661.03 |
| Lien of April 14, 1961 | 1,344.69 |
| Lien of July 17, 1961 | 1,653.23 |
| Lien of October 3, 1961 | 1,164.04 |

[3] The first two liens, November 29, 1960, and January 30, 1961, were satisfied in full. $546.68 was available for partial payment of the April 14, 1961, lien. The balance of the April lien and the full amounts of the July 17 and October 3, 1961, liens remained unsatisfied.

over the attorney's fees,[4] and that $1,250 more should have been applied to reduce the unpaid federal taxes.[5] With one judge dissenting, the Arkansas court rejected that contention and sustained the superiority of the claim for the attorney's fee.

It goes unchallenged that the claim for the attorney's fee, arising out of the obligations assumed by the taxpayer in 1958, became enforceable under Arkanas law as a contract of indemnity at the time of default in October 1960 before the filing of the first federal tax liens. Furthermore, it is evident that the suit in which this attorney's fee was earned was commenced on March 24, 1961, prior to the filing of the unpaid federal tax liens crucial to this suit, i. e., the liens of April 14, July 17, and October 3, 1961. Nevertheless, because this fee had not been incurred and paid and could not be finally fixed in amount until November 15, 1961, after all the federal liens had been filed, we hold that the claim for attorney's fees remained inchoate at least until that date and that the federal tax liens are entitled to priority.

The priority of the federal tax lien provided by 26 U. S. C. § 6321 as against liens created under state law is governed by the common-law rule—"the first in time is the first in right." *United States* v. *New Britain,* 347 U. S. 81, 85–86. It is critical, therefore, to determine when competing liens, whether federal- or state-created, come into existence or become valid for the purpose of the rule.

---

[4] The United States did not challenge the priority of the mechanic's lien or of any other distribution fixed by the decree.

[5] Once the attorney's fee is subordinated to the federal tax liens, the $1,250 would be borne by the other claimants in order of seniority among themselves under state law. On the basis of the present decree, the share of the mechanic's lienor Anderson would be eliminated and that of the second mortgagee, The Development Company, reduced by half.

The tax lien arises, according to § 6322, when the tax is assessed, but as against the specific interests mentioned in § 6323 (a)—mortgagees, pledgees, purchasers and judgment creditors—it is not valid until placed of public record, and insofar as the federal lien attaches to securities, mortgagees, pledgees and purchasers must have actual notice of the lien.[6] § 6323 (c).

As for a lien created by state law, its priority depends "on the time it attached to the property in question and became choate." *United States* v. *New Britain, supra,* at 86; *United States* v. *Security Tr. & Sav. Bank,* 340 U. S. 47. Choate state-created liens take priority over later federal tax liens, *United States* v. *New Britain, supra; Crest Finance Co.* v. *United States,* 368 U. S. 347, while inchoate liens do not. See *United States* v. *Liverpool & London Ins. Co.,* 348 U. S. 215; *United States* v. *Scovil,* 348 U. S. 218; *United States* v. *Colotta,* 350 U. S. 808. And it is a matter of federal law when such a lien has acquired sufficient substance and has become so perfected as to defeat a later-arising or later-filed federal tax lien.[7] "Otherwise,

---

[6] "While it is true that the filing of the notice of the tax lien may constitute notice in the case of real property, it is inequitable for the statute to provide that it constitutes notice as regards securities. For example, when a broker purchases a security for his customer on the exchange, it is obviously impossible for him to check all the offices in which a notice of the tax lien may be duly filed to determine whether the security is subject to such lien. A like situation exists with respect to over-the-counter and direct transactions in securities. An attempt to enforce such liens on recorded notice would in many cases impair the negotiability of securities and seriously interfere with business transactions. The adoption of the amendment will remove an existing hardship without causing any undue loss of revenue." H. R. Rep. No. 855, 76th Cong., 1st Sess. 26 (1939).

[7] "The effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question. Hence, although a state court's classification of a lien as specific and perfected is entitled to weight, it is subject to reexamination by this Court." *United States* v. *Security Tr. & Sav. Bank,*

a State could affect the standing of federal liens, contrary to the established doctrine, simply by causing an inchoate lien to attach at some arbitrary time even before the amount of the tax, assessment, etc., is determined." *United States* v. *New Britain, supra,* at 86. The federal rule is that liens are "perfected in the sense that there is nothing more to be done to have a choate lien—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *Id.,* at 84.

We reject respondents' contention that the choateness rule has no place when a mortgage under § 6323 (a) is involved. The predecessor to § 6323 was first enacted by Congress in 1912 in order to protect mortgagees, purchasers and judgment creditors against a secret lien for assessed taxes and to postpone the effectiveness of the tax lien as against these interests until the tax lien was filed. H. R. Rep. No. 1018, 62d Cong., 2d Sess. The section dealt with the federal lien only and it did not purport to affect the time at which local liens were deemed to arise or to become choate or to subordinate the tax lien to tentative, conditional or imperfect state liens. Rather, we believe Congress intended that if out of the whole spectrum of state-created liens, certain liens are to enjoy the preferred status granted by § 6323, they should at least have attained the degree of perfection required of other liens and be choate for the purposes of the federal rule.

The Court has never held that mortgagees face a less demanding test of perfection than other interests when competing with the federal lien. Indeed *United States* v. *Ball Constr. Co.,* 355 U. S. 587, stands for just the contrary. There the state law creditor, asserting that the

340 U. S. 47, 49–50; see also, *United States* v. *Acri,* 348 U. S. 211; *United States* v. *Vorreiter,* 355 U. S. 15. Thus the fact that, under Arkansas law, the claim for attorney's fees becomes enforceable upon default as a contract of indemnity does not foreclose inquiry by this Court into the degree the claim is choate at that time.

assignment under which he claimed was a mortgage within the predecessor to § 6323, insisted upon priority over the federal lien by virtue of the previously executed assignment. A majority of the Court, although not expressly declaring the assignment to be a mortgage, held that § 6323 (a) afforded the creditor no protection since his interest was "inchoate and unperfected." The four dissenters thought the assignment was a mortgage and that it was "completely perfected" and "in all respects choate." While disagreeing on the choateness of the particular assignment involved there, the Court was unanimous in applying the choateness test to those seeking the protection of § 6323 (a). We follow that lead here and therefore proceed to measure against the rule the choateness of the mortgagee's lien for reasonable attorney's fees before us.

Clearly the identity of the lienholder and the property subject to the lien are definite here, but it is equally apparent that the amount of the lien for attorney's fees was undetermined and indefinite when the federal tax liens in question were filed.[8] The mortgage held by respondents secured a promissory note which obligated the mortgagor maker to pay a "reasonable attorney's fee" "in the event of default" and "of the placing of this note in the hands of an attorney for collection." By the time the federal liens subordinated by the Arkansas courts were placed of public record, default had occurred, the mortgagee had elected to declare the note due and payable, an attorney had been engaged and a suit to foreclose the mortgage had been filed. But the "reasonable attorney's fee"—reasonable in relation to the service to be performed by the

---

[8] There is nothing in *Security Mortgage Co.* v. *Powers,* 278 U. S. 149, which compels us to hold the lien choate, since the issue there was the status of an attorney's fee clause, fixed in amount, in bankruptcy proceedings where the rigorous federal lien choateness test was not necessarily applicable.

attorney—had not been reduced to a liquidated amount. The final amount was to be established by court decree and the Chancery Court set the fee considerably below the sum requested. Moreover, there is no showing in this record that the mortgagee had become obligated to pay and had paid any sum of money for services performed prior to the filing of the federal tax lien.

*Ball* once again provides a parallel. Sums due the contractor-taxpayer under a particular construction contract were assigned to the surety as security for any future indebtedness of the contractor to the surety arising under that contract or any other. After the filing of the federal tax lien against the contractor, the surety made advances to complete another contract of the taxpayer, as the surety was obligated to do under its bond issued on that contract, and the taxpayer thereby became indebted to the surety. The majority held the surety's interest "inchoate and unperfected" at the time of the filing of the federal tax liens.[9] *Ball* therefore rejects as inchoate an assignee's or mortgagee's lien to secure future indebtedness of the taxpayer-debtor. The creditor holds merely "a *caveat* of a more perfect lien to come." *New York* v. *Maclay,* 288 U. S. 290, 294. Likewise, when a mortgagee has a lien for an attorney's fee which is uncertain in amount and yet to be incurred and paid, such a lien is inchoate and is subordinate to the intervening federal tax lien filed before the mortgagee's lien for the attorney's fee matures.[10]

---

[9] Contrast *Crest Finance Co.* v. *United States,* 368 U. S. 347, where the assignment and the loans were consummated prior to the accrual and filing of the federal tax liens.

[10] See in accord, with respect to attorney's fees, *United States* v. *Bond,* 279 F. 2d 837 (C. A. 4th Cir.); *In re New Haven Clock & Watch Co.,* 253 F. 2d 577 (C. A. 2d Cir.); *Bank of America* v. *Embry,* 188 Cal. App. 2d 425, 10 Cal. Rptr. 602; with respect to payments of subsequently attaching local taxes, *United States* v. *Bond, supra; United States* v. *Christensen,* 269 F. 2d 624 (C. A. 9th Cir.); and

But, it is said, the principal and interest of the mortgage were definite in amount, the attorney's fee later became certain by court order [11] and if the tax lien were to prevail the preference of the mortgagee given by § 6323 will be frustrated since payment of the attorney's fee will reduce the net amount realized from the mortgage. Aside from the fact that the mortgagee here will experience no such reduction,[12] this argument would subordinate federal tax liens to inchoate liens and in both *United States* v. *New Britain, supra,* and *United States* v. *Buffalo Savings Bank,* 371 U. S. 228, the Court denied priority to local tax liens which were imperfect when the federal tax lien was filed even though the former had priority over the mortgage and would reduce the recovery of the mortgagee.[13]

The court below was in error and its judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE DOUGLAS dissents.

---

with respect to future advance clause transactions, *American Surety Co.* v. *Sundberg,* 58 Wash. 2d 337, 363 P. 2d 99; Rev. Rule 56–41, 1956–1 Cum. Bull. 562; cf. *United States* v. *Peoples Bank,* 197 F. 2d 898 (C. A. 5th Cir.); *Hoare* v. *United States,* 294 F. 2d 823 (C. A. 9th Cir.).

[11] This argument would require us to revitalize the long since rejected relation-back doctrine. See *United States* v. *Security Tr. & Sav. Bank,* 340 U. S. 47, 50.

[12] See note 5, *supra.*

[13] By the same token respondents' contention that the rules against "unjust enrichment" are violated by preferring the tax lien to the claim for attorney's fees is without merit. Both *New Britain* and *Buffalo Savings Bank* prefer the federal lien even though the mortgagee's interest in the proceeds will be reduced by later-arising local taxes having priority under state law over the mortgagee. The attorney's services, moreover, were rendered for the benefit of the mortgagee to protect his interest in the property, and the United States, holding an adverse interest, received no such benefit from them that its interest is to be charged therefor.