Donald L. **ASHER** and Garrett Vanden-burgh, Plaintiffs-Appellees,

v.

**UNITED STATES** of America, Defendant-Appellant.

No. 77–1633.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 7, 1977.

Decided Feb. 24, 1978.

M. Carr Ferguson, David E. Carmack, Tax Div., U. S. Dept. of Justice, Washington, D. C., Thomas P. Sullivan, U. S. Atty., Chicago, Ill., for defendant-appellant.

William J. Wise, Chicago, Ill., for plaintiffs-appellees.

Before CASTLE, Senior Circuit Judge, WOOD, Circuit Judge, and WYZANSKI, Senior District Judge.[*]

CASTLE, Senior Circuit Judge.

The government appeals from the judgment below which found the plaintiffs to be judgment lien creditors with respect to the bank account of a third party debtor prior to the filling of a federal tax lien on the debtor's property. 26 U.S.C. §§ 6321[1] and 6323.[2] Specifically, the appellant chal-

---

[*] The Honorable Charles Edward Wyzanski, Jr., United States District Judge, District of Massachusetts, is sitting by designation.

1. § 6321. Lien for taxes
    If any person liable to pay any tax neglects or refuses to pay after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United

States upon all property and rights to property, whether real or personal, belonging to such person.

2. § 6323. **Validity and priority against certain persons**
    (a) *Purchasers, holders of security interests, mechanic's lienors, and judgment lien creditors.*—The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which

lenges the district court's holding that the appellees obtained a valid lien upon the debtor's bank account under Illinois law by delivering a writ of execution to the sheriff. Finding the district court properly interpreted Illinois law, we affirm.

The facts can be briefly stated. Plaintiffs Asher and Vandenburgh obtained a judgment for $83,193.75 against Wente Company (Wente) in the Circuit Court of Cook County, Illinois, on December 10, 1974. Plaintiffs delivered a writ of execution on that judgment to the sheriff of Cook County on December 12, 1974. On January 15, 1975, the Internal Revenue Service (IRS) filed with the Cook County Recorder of Deeds a notice of lien on all property of Wente pursuant to an October 7, 1974 assessment of unpaid taxes totalling $14,-711.40. On January 22, 1975, the Bank of Northfield paid the $3,892.71 balance in Wente's account to the United States pursuant to a notice of levy served on the bank by the IRS. Plaintiffs obtained a citation to discover Wente's assets from the Circuit Court of Cook County on January 23, 1975, and, upon finding the bank account depleted, requested that the IRS return the money, claiming it was wrongfully seized. Upon the refusal of the IRS to honor the request, plaintiffs brought this suit in the district court which granted summary judgment in their favor. *Asher v. United States*, 436 F.Supp. 22 (N.D.Ill.1976).

We agree with the district court that before determining that a state lien has priority over a federal tax lien under the first in time, first in right rule of § 6323, two questions must be answered in the affirmative: whether a valid lien existed under state law when the federal lien was recorded; and, if so, whether that lien is "choate" under federal law. *United States v. Pioneer American Insurance Co.,* 374 U.S.

84, 88, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963); *Dragstrem v. Obermeyer*, 549 F.2d 20, 22–23 (7th Cir. 1977). The government has presented only the first question for review in this appeal and, consequently, our inquiry is narrowed to whether the district court properly interpreted Illinois law. Fed.R.App.P. 28. We do not reach the federal "choateness" question.[3]

The parties agree that, in Illinois, once a creditor obtains a judgment against a debtor, he obtains a lien upon the debtor's real property. Ill.Rev.Stat., ch. 77, § 1. It is also undisputed that a lien is created upon tangible personal property by delivery of a writ of execution to the sheriff, *id.* § 9, and upon intangible personal property by instituting a proceeding to discover assets under Ill.Rev.Stat., ch. 110, § 73. *Mid-West National Bank v. Metcoff*, 23 Ill.App.3d 607, 611, 319 N.E.2d 336, 340 (1974); *Bank of Broadway v. Goldblatt*, 103 Ill.App.2d 243, 247, 243 N.E.2d 501, 503 (1968). Since, in the present case, the federal tax lien was recorded subsequent to the delivery of the writ of execution to the sheriff but prior to the citation to discover assets proceeding, the parties differ as to whether delivery of the writ also gives rise to a lien upon intangible personal property such as Wente's bank account.

The district court agreed with the plaintiffs and followed *Levine v. Pascal*, 94 Ill. App.2d 43, 55, 236 N.E.2d 425, 430 (1968). In *Levine*, the plaintiff was held to have acquired a lien upon defendant's intangible personal property (a beneficial interest in a land trust) upon delivery of the writ of execution to the sheriff:

Clearly, plaintiff became a lien creditor as defined in Section 9–301(3) of the Commercial Code when the writ of execution was placed in the hands of the sher-

---

meets the requirements of subsection (f) has been filed by the Secretary or his delegate.

\* \* \* \* \* \*

**3.** The additional requirement of "choateness" is designed to prevent the states from establishing liens at arbitrary times simply to prime federal tax liens. *United States v. Pioneer American Ins. Co., supra*, 374 U.S. at 89, 83

S.Ct. 1651. The district court found the plaintiffs' state lien to be choate under federal law since "the identity of the lienor, the property subject to the lien, and the amount of the lien [were] established." *Asher v. United States, supra* at 26, *quoting United States v. New Britain*, 347 U.S. 81, 84, 74 S.Ct. 367, 98 L.Ed. 520 (1954).

iff. See chapter 77, section 9, Ill.Rev. Stats.1965, and *Century Pipe & Supply Co. v. Empire Factors*, 19 Ill.App.2d 165, at 169, 153 N.E.2d 298. While it may be doubtful whether the plaintiff could effectively enforce his lien by means of the writ of execution, there is no doubt that he could do so through citation proceedings.

*Id.*

The government argues that the result in *Levine* is against the weight of the law in Illinois and is dicta. Regarding the latter argument, it appears that the plaintiff in *Levine* had instituted a citation to discover assets proceeding, in addition to delivering the writ of execution to the sheriff, before the competing creditor (a bank) recorded its assignment. While, from the perspective of this case, it would have been sufficient for *Levine* to hold that the lien attached upon commencement of the citation to discover assets action, it was necessary for that court to make some determination of when the plaintiff's lien attached. Thus, we find that *Levine* cannot be ignored.[4]

In support of the argument that *Levine* is contrary to Illinois law, the government cites *Crawford v. Schmitz*, 139 Ill. 564, 569, 29 N.E. 40, 41–42 (1891), which stated that intangible personal property "could not be taken on execution." The government also lists cases holding that the test in Illinois as to whether a lien on property has been established is whether the creditor has the power to sell that property. *Commerce Vault Co. v. Barrett*, 222 Ill. 169, 176, 78 N.E. 47, 48 (1906); *Lehman v. Cottrell*, 298 Ill.App. 434, 440, 19 N.E.2d 111, 114 (1939). Finally, the appellant notes that subsequent Illinois appellate cases citing *Levine* have

done so only for the proposition that a lien on intangible personal property arises upon the institution of subsequent citation proceedings. *Mid-West National Bank v. Metcoff, supra; Bank of Broadway v. Goldblatt, supra.* See also *Sterling Savings and Loan Association v. Schultz*, 71 Ill.App.2d 94, 109, 218 N.E.2d 53, 61 (1966).

First, we do not view the cases following *Levine* as authority for the government's view since neither mentioned the consequences of a writ of execution being delivered to the sheriff.[5] In contrast, while possibly not strictly essential to the disposition of the case, *Levine* definitely states that the plaintiff became a lien creditor upon delivery of the writ of execution. Second, regarding the older Illinois authorities which required a right of sale before a lien arose, *Levine* could be interpreted as being consistent with those cases since the appellate court notes that the plaintiff had the right of sale which could be exercised through citation proceedings. Under this interpretation, it can be argued that parallel steps must be taken after delivery of the writ to the sheriff to exercise the right of sale for both tangible and intangible personal property: tangible property may be sold only after the sheriff physically takes possession of the property from the owner; intangible property may be sold only after the court orders the owner to relinquish possession to the judgment creditors. Thus, if a lien is given upon tangible personal property by delivery of the writ to the sheriff, a different method of exercising the right of sale should not prevent the similar creation of a lien on intangible personal property.

However, to the extent *Levine* cannot be completely reconciled with the Illinois Supreme Court cases cited by the government,

---

**4.** The government also argues that *Levine* did not decide whether a beneficial interest in a land trust was a chose in action or was some other form of personal property and, consequently, its broad statement might not apply to intangible personal property. While ostensibly declining to specify the property interest involved, the opinion in *Levine* can be fairly interpreted as assuming it was dealing with a chose in action. *Id.* at 53, 236 N.E.2d at 430. Also *Levine's* definition of a chose in action, "a right to receive or recover a debt or money due

on a bond, note, or other contract," easily includes intangible personal property such as a bank account. *Id.*

**5.** We cannot accept the government's contention that, by saying a lien on intangible property attaches upon initiation of the supplemental proceeding, the subsequent cases imply that no lien attaches at an earlier time. Such an implication, if it exists, is not persuasive in the face of the clear statement in *Levine*.

we accept its statement as an accurate summary of the current Illinois law regarding the creation of liens on intangible personal property. *See West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940). We are persuaded by the clarity of the court's statement, the substantial lapse of time since the latest Illinois Supreme Court case cited, and the reference in *Levine* to § 9–301(3) of the intervening Uniform Commercial Code; a section which could be construed as overruling any prior inconsistent rule regarding the creation of liens.[6] The last reason is especially compelling in light of the language in *Crawford v. Schmitz, supra,* 139 Ill. at 569, 29 N.E. at 42: "This common law rule still prevails *except where it has been changed by statute* . . ." (emphasis added).

For the reasons stated above, the judgment of the lower court is affirmed.

AFFIRMED.

---

**6.** Ill.Rev.Stat. ch. 26, § 9–301(3) provides:

(3) A "lien creditor" means a creditor who has acquired a lien on the property involved by attachment, levy or the like . . ..

The appellate court in *Levine* may have been interpreting the phrase "or the like" to mean that the delivery of the writ of execution to the sheriff causes a judgment creditor to become a "lien creditor." It is accepted that the words "judgment lien creditor" in § 6323 generally are to be read as the equivalent to "lien creditor" in § 9–301(3) of the UCC. *Dragstrem v. Obermeyer, supra* at 25; *Nevada Rock & Sand Co. v. United States,* 376 F.Supp. 161, 169 (D.Nev. 1974). Consequently, by satisfying § 9–301(3), the plaintiff in this case has satisfied the state law portion of the § 6323 priority inquiry.