**BANK OF ST. CHARLES**

v.

**ALLOY & STEEL FABRICATORS, INC., et al.**

**BANK OF ST. CHARLES**

v.

**UNITED STATES of America.**

**UNITED STATES of America**

v.

**BANK OF ST. CHARLES, et al.**

**LOUISIANA POWER & LIGHT COMPANY, et al.**

v.

**The BANK OF ST. CHARLES, et al.**

Civ. A. Nos. 84–5417, 85–2667, 85–4651 and 85–5007.

United States District Court, E.D. Louisiana.

July 31, 1986.

Herman C. Hoffman, Jr. and Shannon H. Daigle, Jurley and Hoffman, New Orleans, La., for the Bank.

Steven Gremminger, Tax Div., Dept. of Justice, Washington, D.C., for U.S.

MEMORANDUM OPINION

MENTZ, District Judge.

The issue before the Court is whether a collateral mortgage on real property which was recorded prior to a federal tax lien on the same property has legal priority where the act of sale was not recorded until after the tax lien arose. This is a question of first impression on which there is a paucity of recent legal authority. The parties stipulated all material facts and brought cross-motions for summary judgment.

On April 24, 1981, Alloy & Steel Fabricators, Inc. ("Alloy & Steel") executed a collateral mortgage on real property located in St. Charles Parish, Louisiana to the Bank of St. Charles ("Bank"). Alloy & Steel did not own the mortgaged property

when the collateral mortgage was executed. Approximately two months later, on June 6, 1981, Alloy & Steel acquired title to the property by act of sale passed before a notary public. Alloy & Steel recorded the mortgage on September 23, 1981, but did not record the act of sale until May 4, 1984. When Alloy & Steel failed to pay federal withholding taxes, assessments were made. Notices of a federal tax lien evidencing those assessments were recorded on October 20, 1983, December 19, 1983 and March 29, 1984.

The United States contends that its tax lien has priority even though the mortgage was recorded first because the title was not recorded until after the United States' tax lien arose. Thus, United States argues that the validity of the mortgage is dependent on the validity of the act of sale, which being unrecorded rendered the mortgage inchoate and precluded it from creating a "security interest" pursuant to 26 U.S.C. § 6323. 26 U.S.C. § 6323(a) provides that a tax lien shall not be valid against a holder of a "security interest" until notice of tax lien is filed. "Security interest" is defined by 26 U.S.C. § 6323(h)(1) as:

> any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time ... if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation....

The Bank contends that the unrecorded title did not affect the validity of the mortgage because the mortgage encumbered the property from the moment of purchase and became choate upon recordation.

Federal law governs the priority of competing liens where a federal tax lien is involved. *See United States v. Pioneer*

*American Insurance Co.,* 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963). Specifically, the Federal Tax Lien Act of 1966 ("Tax Lien Act"), 26 U.S.C. §§ 6321–6326 sets forth the rights of private creditors with respect to federal tax liens.

Priority under the Tax Lien Act is governed by "the first in time, first in right rule," whereby priority is given to the lien first perfected. *United States v. New Britain,* 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). Under 26 U.S.C. § 6323(a), a federal tax lien arises when proper notice of the tax lien is filed pursuant to 26 U.S.C. § 6323(f). The Tax Lien Act fails to expressly designate when a state lien arises. The courts have established that in order for a state lien to prime a federal tax lien, not only must a valid lien exist under state law, but it must also have been choate under federal law, prior to the filing of a notice of federal tax lien. *Pioneer American Insurance Co.,* 374 U.S. at 88, 83 S.Ct. at 1655; *Asher v. United States,* 570 F.2d 682, 683 (7th Cir.1978). A state lien is deemed to be choate under federal law when "the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *New Britain,* 347 U.S. at 84, 74 S.Ct. at 369.

Applying the foregoing principles, the Court finds that under Louisiana law a valid lien existed in favor of the Bank prior to the filing of the federal tax lien. The parties have stipulated that a mortgage in favor of the Bank was passed on April 24, 1981 and filed for record on September 23, 1981. It was passed before a notary and two witnesses in authentic form. *See* La. Civ.Code art. 3305.[1] The United States concedes that the mortgage specifically identifies the real property which is subject to the mortgage, thereby satisfying the requirement that the property which is subject to the mortgage be definite. *See* La. Civ.Code Ann. art. 3306.[2] The fact that the

---

**1.** Article 3305 provides in pertinent part that: A conventional mortgage can only be contracted by act passed in presence of a Notary and two witnesses, or by act under private signature.

**2.** Article 3306 provides:
To render a conventional mortgage valid, it is necessary that the act establishing it shall state precisely the nature and situation of

property was acquired after the mortgage was given does not present a problem because Louisiana law provides that a mortgage may bind after acquired property. *See* La.Civ.Code art. 3304;[3] Note, *Mortgages-After-Acquired Property Clauses-Articles 3304, 3308, Louisiana Civil Code of 1870*, XV Tul.L.Rev. 314 (1941). The mortgage also set forth the exact sum for which it was given. *See* La.Civ.Code art. 3309.[4] Clearly, the mortgage met the requirements of the Louisiana Civil Code.

The Supreme Court of Louisiana in *Gallaugher v. Hebrew Congregation*, 35 La. Ann. 829 (1883), addressed the question of whether a judicial mortgage affects real estate to which a judgment debtor has only an unrecorded title. On July 18, 1872, Gallaugher recorded a judgment which he had obtained against the judgment debtor, Delacroix. On October 1, 1875, Delacroix acquired real estate at the place of registry, but did not record his title until September 15, 1876, almost one year later. When Delacroix sold the property to the defendant on September 12, 1876, Gallaugher's judgment against Delacroix was recorded but, Delacroix's title was not recorded. The Court stated that:

> While the creditors of the vendor cannot be prejudiced by an unrecorded transfer, those of the purchaser may be benefitted by it, subject however to the superior rights of the former.

> The registry of the transfer is no condition precedent essentially required to subject the real estate to judicial or legal mortgages inscribed against purchaser and vendor, and which it is admitted would, beyond doubt, reach the property in case of a registry of the title in the proper Conveyance Book.

> The law is, that judicial and legal mortgages registered against the purchaser affect and encumber the property from

the very instant of purchase, whether the deed be recorded or not, but rank subordinate to the encumbrances existing on the property against the vendor at the moment of the transfer.

*Id.* at 831–832. Thus, the Court found that a recorded mortgage affects and encumbers property even though the title is not recorded.

The requirement of La.Rev.Stat.Ann. § 2754 that a notarial act concerning immovable property be recorded in order to have effect against third parties protects the creditors of the vendor and bona fide purchasers from the vendor without notice. *Gallaugher*, at 831; *Logan v. Herbert*, 30 La.Ann. 727, 732 (1878). It is true that creditors of Alloy & Steel's vendor would not have notice of the act of sale or the mortgage prior to recordation of the act of sale. However, the United States is not a creditor of the vendor, but of the vendee, Alloy & Steel. Once the mortgage was recorded on September 23, 1981, it served as notice to all creditors of Alloy & Steel. All necessary facts concerning the mortgage were determinable from the St. Charles Parish records by any creditor of Alloy & Steel. Thus, the fact that the act of sale was not recorded until May 4, 1984 does not render the mortgage invalid. A valid state lien existed from the moment the property was purchased and was perfected on the date of recordation, all of which occurred before the federal tax lien arose.

In addition, the Court finds that all three criteria for a choate security interest under federal law were met when the mortgage was filed for record on September 23, 1981. The mortgage document established the Bank of St. Charles as lienor, the specific property subject to the lien, and the amount Alloy & Steel owed to the Bank.

---

each of the immovables on which the mortgage is granted.

**3.** Article 3304 provides:
If a person contracting an obligation towards another, grants a mortgage on property of which he is not then owner, this mortgage shall be valid if the debtor should ever after

acquire the ownership of the property, by whatever right.

**4.** Article 3309 provides:
To render a conventional mortgage valid, it is necessary that the exact sum for which it is given, shall be declared in the act.

Therefore, the Court finds that the mortgage was both a valid security interest under Louisiana law and was choate under federal law as of the date of recordation on September 23, 1981. Since the United States did not file its first notice of tax lien until October 20, 1983 the mortgage in favor of the Bank primes the federal tax lien.

Accordingly, the motion of the United States for summary judgment is DENIED and the motion of the Bank of St. Charles for summary judgment is GRANTED.