Jeffrey FEILER; Kathy Feiler;
Inman, Weisz & Steinberg,
Plaintiffs–Appellants,

v.

UNITED STATES of America; United
States Treasury Department; United
States Internal Revenue Service, Defen-
dants–Appellees.

No. 92–56378.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 5, 1994.

Decided Aug. 8, 1995.

Barry M. Weisz and Hali E. Ziff, Inman, Weisz & Steinberg, Beverly Hills, CA, for plaintiffs-appellants.

Gary R. Allen, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendants-appellees.

Before: BROWNING, PREGERSON, and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Appellants Jeffrey and Kathy Feiler, as well as their law firm, appeal the district court's grant of summary judgment against them in their wrongful levy action. The Feilers won a decree of specific performance on their contract to purchase a house, and pursuant to that contract the state court judgment also awarded them attorneys' fees. Prior to the date of the state court judgment, however, the IRS recorded a tax lien on the sellers' assets. After payment of the recorded first and second trust deeds, the seller's remaining proceeds from the sale of the house cannot satisfy the claims of both the Feilers and the IRS. The IRS has subsequently levied on the funds. The Feilers argue that the levy is wrongful because their claim for attorneys' fees should take priority over the federal tax lien.

Acting pursuant to an agreement between the parties, the district court adjudicated the dispute on cross-motions for summary judgment and found for the IRS. We find that federal law gives the IRS levy priority over the Feilers' claim and affirm.

## Background

In June 1985, appellants Kathy and Jeffrey Feiler agreed to buy a single-family home in Los Angeles from Egzine and Robert Bennett. The Feilers and the Bennetts signed a contract setting the sale price at $149,500. The agreement included a clause providing for reimbursement of the Feilers' attorneys' fees in the event that the Bennetts failed to perform.

The Bennetts did fail to perform, and in January 1986 the Feilers instituted a California state court lawsuit to compel specific performance of the contract and to recover the attorneys' fees they would incur in the process of obtaining judgment. Contemporaneously, the Feilers recorded a Notice of Pending Action (lis pendens). Meanwhile, in May 1988 the Internal Revenue Service recorded a tax lien against any and all of the Bennetts' property because they had failed to pay $45,910 in back taxes.

The state court lawsuit went to trial in June 1989, and in August 1989 the Feilers won a judgment of specific performance. The court thus directed:

> ... within three days from the date on which the clerk of this Court notifies Defendants that Plaintiffs have deposited with the Clerk the sum of $145,500, which is the balance of the purchase price due Defendants, Defendants shall deposit with the clerk a complete conveyance in fee to Plaintiffs for the property ... together with marketable title.... Defendants [shall] pay Plaintiffs attorneys' fees in the sum of $35,000 and costs in the sum of $3,563.04 incurred in this action. The clerk is hereby directed to deduct from the Defendants' proceeds, after payment of all liens of record on the title report, proceeds due the Defendants in order to pay, wheth-

er fully or partially, the award of attorneys' fees and costs.

[CR 16 Exh. B at 3–4]. When the Feilers' attorney drafted the order, he was aware [CR 24] (and had made the state court aware) of two outstanding deeds of trust on the property, both recorded prior to 1985, for an aggregate amount of $107,600. He thus assumed that at least $37,900 would remain to satisfy the Feilers' claim for attorneys' fees and court costs.

The Bennetts failed to cooperate in the slightest, and the Feilers' attorney obtained a title report in September 1989. [CR 24 Exh. C]. Upon receipt of that report, the Feilers and their attorney learned for the first time of the outstanding federal tax lien. Because the court clerk would not undertake to complete the title transfer without explanations of all liens, the Feilers requested that the IRS issue a demand statement with respect to its lien. Once the Feilers deposited the money in October 1989, they obtained a court order directing the clerk to effect the sale pursuant to the August 1989 judgment. The Bennetts' proceeds were escrowed with the title company, which paid off the balances due on the two mortgages and retained the roughly $47,000 remaining. [CR 16 Exh. D]. In September 1990, the IRS levied on these funds in order to satisfy its claim.[1] The Feilers instituted this suit for wrongful levy, pursuant to 26 U.S.C. § 7426(a)(1), in June 1991. The district court granted summary judgment for the IRS, and the Feilers timely appeal.

## Discussion

◼ The district court's grant of summary judgment receives *de novo* review. *Jones v. Union Pacific R.R.*, 968 F.2d 937, 940 (9th Cir.1992).

### A

◼ Federal law governs the relative priority of federal tax liens. *United States v. Equitable Life Assurance Soc'y*, 384 U.S. 323, 330, 86 S.Ct. 1561, 1565–66, 16 L.Ed.2d

---

1. Although there was a question of whether the IRS should have served the notice of levy on the holder of the funds (i.e., the title company) rather than on the Feilers' law firm, it is immaterial to resolution of this appeal.

593 (1966). The Internal Revenue Code provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property ... belonging to such person." 26 U.S.C. § 6321 (1988). Section 6323 in turn sets out the relative priority of tax liens imposed by § 6321; in particular § 6323(a) states that such liens are not effective against "any purchaser, holder of a security interest ... or judgment lien creditor until notice thereof" has been appropriately filed.

■ The parties do not dispute that the IRS filed proper notice in August 1988. However, neither do the parties dispute that the Feilers were "purchasers" of the Bennetts' house before the IRS recorded its lien. Section 6323(h)(6) defines "purchaser" as "a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchaser without actual notice." Subsection (h)(6) further provides that "a written executory contract to purchase or lease property ... shall be treated as an interest in property." As a result, the IRS does not contest the Feilers' entitlement to the Bennetts' house itself. The 1988 IRS lien was not valid against their "purchase" of the house, which had been effected by the 1985 signing of the sale contract. *See Newnham v. United States*, 813 F.2d 1384, 1385 (9th Cir.1987).

The question here, though, relates to the Feilers' claim for attorneys' fees and court costs. In this context, only § 6323(e) specifically addresses litigation expenses:

> If the lien imposed by section 6321 is not valid as against a *lien or security interest*, the priority of such lien or security interest shall extend to ... (3) the reasonable expenses, including reasonable compensation for attorneys, actually incurred in collecting or enforcing the obligation secured ... to the extent that, under local law, any such item has the same priority as the *lien or security interest* to which it relates.

26 U.S.C. § 6323(e) (emphasis added). This section says nothing about priority of claims for expenses incurred to enforce other types of interests, such as those held by "purchasers" pursuant to executory contracts.

## B

Prior to the Federal Tax Lien Act of 1966, Pub.L. No. 89–719, 80 Stat. 1125, which *inter alia* added subsections (e) and (h)(6) to § 6323, existing Supreme Court precedent would necessarily have controlled the outcome here. In *United States v. Pioneer American Ins. Co.*, 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963), the Court addressed a closely analogous situation and held for the government.

Pioneer American was a mortgagee which held the taxpayer's note entitling it to a reasonable attorney's fee in the event of default and a resulting need for collection efforts. Upon the taxpayer's default, Pioneer brought a state court foreclosure suit in which it also sought attorneys' fees. Subsequent to the filing of that suit, but prior to the decree of foreclosure and the fixing of the attorneys' fee award, the United States recorded several tax liens against the taxpayer's property. Pioneer asserted that its claim to proceeds of the foreclosure sale had priority over the tax liens to the extent of *both* its note and its attorneys' fees.

The Supreme Court rejected Pioneer's assertion of the superiority of its attorneys' fees claim. It reasoned that this claim had "remained inchoate" until the date of judgment and fixing of the amount of the award, even though the claim had become enforceable under state law as a "contract of indemnity" prior to the recordation of the federal tax liens. *Id.* at 87, 83 S.Ct. at 1654.

## C

■ The Feilers' claim for attorneys' fees did not become choate until August 1989, since they did not obtain the decree awarding them specific performance and fixing the fees incurred until that time. Under *Pioneer American*, the IRS lien would have priority and the Feilers would have the status of ordinary judgment creditors. *Id.* at 88–89, 83 S.Ct. at 1655. Since this decision, the only potentially relevant change in the law

has been the enactment of subsections 6323(e) and (h)(6). Thus, the question for this court is whether these additions to the statute now dictate a different result.

The language and legislative history of § 6323(e) favor the IRS' position. This section specifically provides recovery of reasonable litigation expenses only for holders of liens and security interests; the statute explicitly distinguishes such claimants from parties to executory contracts such as the Feilers. Moreover, the Senate report accompanying the proposed act suggests that Congress' intent in enacting § 6323(e) was to take certain expenses associated with enforcing prior liens and security interests out of the *Pioneer American* choateness analysis:

> These ... expenses arise out of a lien or security interest having priority over the Federal tax lien, and your committee believes that, although they are *not fully determinable* as of the time notice of the Federal tax lien is filed, nevertheless, they should be given priority since they relate to a lien or security interest having such a priority.

S.Rep. No. 1708, 89th Cong., 2d Sess. (1966), *reprinted in* 1966 U.S.C.C.A.N. at 3722, 3731 (emphasis added). Either in 1966 or thereafter, Congress could have extended this explicit protection to "purchasers," but it has never chosen to do so.

The Feilers also look to § 6323(h)(6) as a source of implied protection for their claim. However, the nature of the 1966 amendments that added § 6323(h)(6) also supports the IRS' position. Prior to those amendments— and thus at the time the Supreme Court decided *Pioneer American*—§ 6323(a) already included the term "purchaser" in the category of those with priority over subsequently filed tax liens. The 1966 amendments added a definition of the term "purchaser," but not with any apparent intent to expand the protections previously provided. *See* S.Rep. No. 1708, *supra, reprinted in* 1966 U.S.C.C.A.N., *supra,* at 3734–35. Only in the absence of the explicit protections extended to holders of other types of inter-

ests by § 6323(e) would the Feilers' contention acquire any persuasive force.[2]

### D

Finally, the Feilers contend that our decision in *Newnham v. United States,* 813 F.2d 1384, 1385 (9th Cir.1987) (Kennedy, J.), controls the outcome here. In *Newnham,* we reversed the district court's dismissal of Newnham's wrongful levy action. Newnham had contracted to purchase a residence from the defaulting seller, and she sued in state court for specific performance, filing a lis pendens contemporaneously. More than a year after she brought suit, the IRS recorded the first of two tax liens on the house. It later levied on the property.

We held that the clear statutory command of §§ 6323(a) & (h)(6) mandated release of the property to Newnham. 813 F.2d at 1385. We further stated that, under local law, recordation of the lis pendens was sufficient to render Newnham's interest valid against a subsequent purchaser without notice. *Id.* We observed: "an executory contract does not become less so by one party's default. It makes no sense for the government to claim a windfall against the nondefaulting purchaser simply because a delinquent taxpayer renounces a contractual obligation." *Id.* at 1386.

The Feilers assert that under *Newnham,* federal law would give their claim priority over the tax lien. They point out that their attorneys' fees claim arises as part and parcel of the same action that gives their interest in the house priority over the tax lien. Their contractual right to recover attorneys' fees arose simultaneously with the contractual right to obtain specific performance. They argue that the *Newnham* court did not restrict its holding to only the real property interests created by the contract, and note that the express language of § 6323(h)(6) can be read to require that the *contract*—not merely one portion of it—be treated as an interest in property.

---

**2.** Contrary to the Feilers' suggestion, neither these amendments nor subsequent cases have rendered obsolete *Pioneer American* 's choateness

analysis. *See United States v. McDermott,* —— U.S. ——, —— & n. 4, 113 S.Ct. 1526, 1529 & n. 4, 123 L.Ed.2d 128 (1993).

*Newnham* does not control here, however. The *Newnham* court tied its holding specifically to Newnham's claim for specific performance. In that case, just as here, the government contended that Newnham was in the position of a judgment lien creditor, whose interest was perfected when she secured the decree of specific performance. The court rejected this view:

> From start to finish, [Newnham's] interest in the property was based on the agreement for the purchase and sale of the specific parcel of land. The interest did not arise from an attempt to collect a debt by executing against property which secured it, or to enforce a court judgment by levying against the property of the judgment debtor. In these latter situations, the identity of the specific property is unimportant ...

*Newnham*, 813 F.2d at 1386.

In *Newnham*, we held that an interest in real property is created by "virtue of [a] written executory contract" for the purchase of real property pursuant to IRS Code § 6323(h)(6)(B). *Id.* at 1386. The creation of that real property interest is protected against subsequent liens by the timely recordation of a lis pendens. *Id.* at 1385. We noted that "the remedy of specific performance is available to purchasers of land precisely because land is considered so unique...." *Id.* In *Newnham*, we did not hold that IRS Code § 6323(h)(6)(B) created an interest in any other provision of an executory contract for the purchase of real property (e.g., an attorney's fees provision). Nor did we expand the use of a lis pendens to protect any interest other than that of title to or right of possession of real property.

■ A lis pendens serves to alert subsequent purchasers or secured parties of a potential senior security interest in the title or ownership of real property pending a possible judgment against that real property. To say that a lis pendens also gives a securi-ty interest in contractual provisions that do not relate to the title or right of possession of the real property is to distort the definition and purpose of a lis pendens.

"A lis pendens filed with the county recorder is a notice that an action is pending 'concerning real property or affecting the title or right of possession of real property.'" *In re Lane*, 980 F.2d 601, 603 (9th Cir.1992) (quoting Cal.Civ.Pro.Code § 409(a)). Section 409(a) has since been repealed and replaced with § 405.20. This new section still defines a lis pendens action as "a real property claim" which is further defined as "the cause or causes of action in a pleading which would, if meritorious, affect ... title to, or the right to possession of, specific real property...." Cal.Civ.Pro.Code § 405.4 (West Supp.1995). The Feilers contend that their claim for attorney's fees arises from the same contractual interest and action as their real property claim. But a claim for attorney's fees arising out of an executory contract to purchase realty does not "affect title to, or the right to possession of, specific real property." *Id.* See *Urez Corp. v. Superior Court (Keefer)*, 190 Cal.App.3d 1141, 235 Cal.Rptr. 837 (2 Dist.1987) (explaining that lis pendens action is one that affects title or possession of real property).

The Feilers argue that, as in *Newnham*, their attorneys' fees claim is valid under local (i.e., California) law. In particular, they contend that, in conformity with the requirement of (h)(6), local law gives the Feilers' interest in the attorneys' fees claim a priority equal to that of their interest in the claim for specific performance, and that under California law the attorneys' fees claim is valid against subsequent purchasers (and, presumably, perfecting lienors) without actual notice. The IRS hotly disputes this interpretation of California law.

We need not resolve this question, however, because the claim's status under local law is irrelevant here. Federal law controls the relative priority of federal tax liens.[3] As

3. The effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question. Hence, although a state court's classification of a lien as specific and perfected is entitled to weight, it is subject to reexamination by this Court. Thus the fact that, under [state] law, the claim for attorney's fees becomes enforceable ... does not foreclose inquiry by this Court into the degree the claim is choate at that time.

*Newnham* exemplifies, before we need answer the question raised by (h)(6)—whether local law would make a claim valid against subsequent purchasers without notice—federal law must first provide that such a claim could have priority. *See McDermott,* —— U.S. at ——, 113 S.Ct. at 1528.

However, as discussed in sections B and C, *supra,* prior case law and the language and history of the statute make this interpretation of federal law untenable. Thus, unlike the purchasers' real property claim in *Newnham,* § 6323 does not accord priority to the Feilers' inchoate claims for litigation expenses incurred in the course of enforcing their written executory contracts.[4]

AFFIRMED.

---

*Pioneer American,* 374 U.S. at 88–89 n. 7, 83 S.Ct. at 1655 n. 7 (internal quotation and citations omitted).

4. The Feilers also sought attorneys' fees pursuant to 26 U.S.C. § 7430. However, that statute provides for recovery of reasonable litigation costs only for "the prevailing party." 26 U.S.C. § 7430(a). Moreover, § 7430(c)(4)(A)(i) requires that in order to obtain attorneys' fees the prevailing party also establish "that the position of the United States in the proceeding was not substantially justified." In other words, the United States' position must have been "unreasonable." *Newnham,* 813 F.2d at 1386. The United States' position here had a substantial basis in law and in fact. The Feilers are not entitled to attorneys' fees.