Dennis Ray DOWDY, et al., Plaintiffs,

v.

CHARTER FINANCIAL GROUP, INC., et al., Defendants.

No. 8:00–CIV–1543–T–24(C).

United States District Court, M.D. Florida, Tampa Division.

Nov. 29, 2000.

Bruce William Barnes, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Tampa, FL, for Dennis Ray Dowdy, Stanton Dowdy, Helen Dowdy, plaintiffs.

Warren A. Zimmerman, U.S. Attorney's Office, Middle District of Florida, Tampa, FL, for Charter Financial Group, Inc., a foreign corporation, Bent Tree Resources, Inc., a Tennessee corporation, William E. Tully, individually, Lena A. Tully, individually, Donald R. Vauters, Jr., individually, USA, defendants.

## ORDER

BUCKLEW, District Judge.

This cause comes before the Court on the United States' motion for summary judgment (Doc. No. 9), the plaintiffs' response in opposition to the United States' motion (Doc. No. 13); the plaintiffs' cross-motion for summary judgment (Doc. No. 16); and the United States' response to the plaintiffs' cross-motion. On November 27, 2000, the Court heard oral argument on both of the pending motions for summary judgment.

## I. Introduction

In their instant motions for summary judgment, both the United States ("the government") and the plaintiffs contend that they are entitled to summary judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure. The plaintiffs and the government agree that there are no relevant facts in dispute and that the Court may decide this case purely as a matter of law. At issue in the parties' cross-motions for summary judgment is the question of who holds a superior interest in a parcel of real estate located in Osceola County, Florida. The plaintiffs contend that under Florida law, they hold a superior interest in the property at issue in this case by virtue of filing a state-law lis pendens against the property in February of 1995. The government, on the other hand, states that under federal law, it has a superior interest in the subject property due to the fact that it held the first perfected lien against the property, notwithstanding the lis pendens filed by the plaintiffs. Both parties have fully briefed and argued their positions, and this matter is now ripe for the Court's review.

## II. Facts of the Case

In December of 1992, the plaintiffs in this case filed a securities fraud action in state circuit court against the owner of the property at issue in this case (hereinafter the "Lisa Lane" property). One of the defendants in the plaintiffs' state action was Mr. William Tully. On May 25, 1994, the plaintiffs filed a separate lawsuit against Mrs. Lena Tully, and that case was later consolidated with the main action involving Mr. Tully. Later in 1994, the plaintiffs discovered that Lena Tully had become the owner of the Lisa Lane property in October of 1993, and on February 10, 1995, the plaintiffs filed a supplementary complaint against William and Lena Tully. In connection with the filing of the supplementary complaint against William and Lena Tully, the plaintiffs, on February

16, 1995, filed a lis pendens regarding the Lisa Lane property.[1]

On December 12, 1995, the plaintiffs were scheduled to appear at a hearing on a motion for summary judgment that they filed against William Tully on August 3, 1995. Prior to that hearing, however, William Tully filed bankruptcy, and the plaintiffs' action was stayed pursuant to 11 U.S.C. § 362. On the same day that the plaintiffs were scheduled to argue their motion for summary judgment, an indictment was filed against William and Lena Tully in the United States District Court for the Northern District of Indiana, Hammond Division. The focus of the charges in the indictment was generally the same as the plaintiffs' civil action against the Tullys.

In early 1995, William Tully's bankruptcy proceeding was dismissed, and the plaintiffs once again attempted to secure summary judgment against him. However, before the scheduled hearing on the plaintiffs' motion, Tully filed a second bankruptcy which again stayed the plaintiffs' case.

Some time after the criminal indictment was filed against the Tullys in Indiana, both William and Lena Tully entered into plea agreements with the government. As part of their plea agreements, the Tullys agreed to relinquish all of their interests in the Lisa Lane property. On February 10, 1999, criminal judgments were entered against the Tullys, to include restitution orders. The plaintiffs were listed as victims on the aforementioned restitution orders.

On February 19, 1999, William Tully's second bankruptcy proceeding was settled as to the plaintiffs' claims, and the plaintiffs scheduled a hearing on their motion for summary judgment against Tully for April 7, 1999. On April 2, 1999 and April 6, 1999, the United States recorded notices of liens in Osceola County, Florida. Those notices regarded the Lisa Lane property, and were recorded in connection with the criminal judgments entered against the Tullys on February 10, 1999.

On April 20, 1999, a final summary judgment was entered against William Tully in the plaintiffs' state action, and on April 21, 1999, the plaintiffs dismissed their claims against Lena Tully pursuant to a settlement agreement. On July 8, 1999, the plaintiffs filed a motion for attachment as to the Lisa Lane property, and that motion was granted on October 21, 1999. In June of 2000, the United States was added as a party to the plaintiffs' state proceeding, and the government subsequently removed this action to federal court.

## III. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. The moving party bears the initial burden of showing the Court, by reference to materials on file that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir.1991). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw infer-

---

1. The parties do not dispute the fact that the 1995 lis pendens has been extended annually since that time.

ences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir.1989); *Samples on Behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988).

## IV. *Discussion*

As noted above, the issue in this case is whether the plaintiffs' interest in the Lisa Lane property is superior to the government's interest. The plaintiffs contend that by virtue of filing their lis pendens in 1995, the government's claim against the Lisa Lane property is barred pursuant to section 48.23, Fla. Stat. (1999). The government argues that notwithstanding Florida's lis pendens statute, federal law dictates that the United States' interest in the Lisa Lane property is superior to the plaintiffs'.

## (A). *The Plaintiffs' Claim Under Florida Law*

■ The lis pendens statute on which the plaintiffs rely is codified at section 48.23 of the Florida Statutes. In pertinent part, section 48.23 states that:

> Except for the interest of persons in possession or easements of use, the filing for record of such notice of lis pendens shall constitute a bar to the enforcement against the property described in said notice of lis pendens of all interests and liens including but not limited to federal tax liens and levies, unrecorded at the time of filing for record such notice of lis pendens unless the holder of any such unrecorded interest or lien shall intervene in such proceedings within 20 days after the filing and recording of said notice of lis pendens.

Section 48.23(b), Fla. Stat. (1999). Florida's lis pendens statute is designed to serve two major purposes. First, a recorded lis pendens acts to give notice to future purchasers or encumbrancers that a suit is pending which could affect title in a given piece of property. *Chiusolo v. Kennedy*, 614 So.2d 491, 492 (Fla.1993). Second, the filing of a lis pendens is designed to protect a plaintiff from intervening liens that could impair or extinguish that plaintiff's claimed property rights. *Chiusolo*, 614 So.2d at 492.

In this case, the plaintiffs filed a lis pendens regarding the Lisa Lane property on February 16, 1995. On April 20, 1999, the plaintiffs obtained a final judgment against William Tully, and on October 21, 1999, the state court granted the plaintiffs' motion to attach the Lisa Lane property. Notwithstanding the fact that the United States recorded its perfected lien on the Lisa Lane property in early April, 1999, the plaintiffs contend that by virtue of their February, 1995 lis pendens, the government's lien is barred under the plain language of Florida's lis pendens statute.[2] Thus, the plaintiffs argue that the Court need look no further than the lis pendens statute to conclude that the government's interest in the Lisa Lane property is precluded.

As an alternative argument, the plaintiffs state that even if the government's claim against the Lisa Lane property is not barred, their claims have priority over the government's interest. Specifically, the plaintiffs argue that an unrecorded, equitable lien arose when they filed their lis pendens in 1995. Given this fact, the plaintiffs argue that their lien was perfected when their lis pendens was recorded in 1995 and is therefore superior to the government's later-perfected lien. Additionally, the plaintiffs contend that at the latest, their lien on the Lisa Lane property was perfected on February 10, 1999, when the government secured a criminal restitution judgment against the Tullys.[3]

---

**2.** It is an undisputed fact that the government did not intervene in the plaintiffs' action when the plaintiffs filed their lis pendens in 1995.

**3.** Apparently, the plaintiffs contend that since

## (B). *The Government's Position*

The federal statute under which the government recorded its lien on the Lisa Lane property is 18 U.S.C. § 3613. In relevant part, section 3613 states that:

> ... [A]n order of restitution ... is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986.

18 U.S.C. § 3613(c). While the government acknowledges that state law determines the nature or existence of a property interest to which a federal lien may attach, the government contends that federal law dictates whether a state lien is sufficiently choate to defeat a federal lien. Therefore, under federal law, the government states that the plaintiffs' interest in the Lisa Lane property did not become choate, if at all, until April 20, 1999, the date that the plaintiffs obtained final judgment against William Tully. Since the government's perfected interest was recorded on April 6, 1999, the government argues that under the federal doctrine of "first in time is the first in right", the United States has a superior interest in the Lisa Lane property.

## (C). *The Court's Opinion*

■ As an initial matter, the Court notes that the government is correct in asserting that federal law controls the issue of who has a superior lien in this case. As noted by the United States Supreme Court, "[t]he effect of a lien in relation to a provision of federal law for the collection of debts owning the United States is always a federal question." *United States v. Security Trust & Savings Bank of San Diego*, 340 U.S. 47, 49, 71 S.Ct. 111, 95 L.Ed. 53 (1950). Thus, while state law

determines the nature or existence of a property interest to which a federal lien may attach, federal law dictates whether a state lien is sufficiently choate to defeat a federal lien. *Central Bank of Tampa v. United States*, 833 F.Supp. 892, 896 (M.D.Fla.1993). Absent a provision to the contrary, lien priority for purposes of federal law is governed by the principle of "first in time is the first in right." *Wasenius v. United States*, 1996 WL 343470, *4 (M.D.Fla.1996) (citing *United States v. McDermott*, 507 U.S. 447, 449, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993)). However, a state lien exists for "first in time" purposes only when it has become choate. In other words, a competing state lien must be perfected to a degree that nothing more must be done to have priority over a perfected federal lien. *Central Bank of Tampa*, 833 F.Supp. at 896. At a minimum, a state lien must establish (1) the identity of the lienor; (2) the property subject to the lien; and (3) the amount of the lien. *Id.*

■ Turning to the matter sub judice, 18 U.S.C. § 3613(c) unequivocally states that a restitution order like the one in this case is to be treated as if it were a tax liability assessed under the Internal Revenue Code. In other words, section 3613 "treats a criminal [restitution order] as a federal tax assessment and utilizes the statutory priority scheme of the Internal Revenue Code to establish the priority of competing creditors." *United States v. Murray*, 963 F.Supp. 52, 55 (D.Mass.1997). Therefore, in determining the priority of the competing liens in this case, the Court must treat the government's lien as a tax liability assessed under the tax code. With this fact in mind, Florida's lis pendens statute, section 48.23(b), specifically states that federal tax liens are barred if the government does not comply with the

they are listed as victims on the relevant restitution judgments, their 1995 lis pendens gives them priority over all other victims listed on the restitution judgments. Notwithstanding the inherent logical problem with this argument, i.e. that a lis pendens filed in a personal

civil suit can somehow act to give priority status to specific victims in a criminal restitution judgment, the plaintiffs have cited no authority in support of this alternative argument and the Court rejects it as meritless.

statute's intervention requirements. Section 48.23(b), Fla. Stat. (1999). Despite section 48.23(b)'s plain language, however, the United States Supreme Court has held that only choate state-created liens take priority over federal tax liens. *United States v. Pioneer American Ins. Co.*, 374 U.S. 84, 88, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963). Were this not the case, "a state could affect the standing of federal liens . . . simply by causing an inchoate lien to attach at some arbitrary time even before the amount of the tax, assessment, etc., is determined." *Pioneer American Ins. Co.*, 374 U.S. at 88–89, 83 S.Ct. 1651. In several federal decisions, courts have found that inchoate attachments, such as a lis pendens, do not have priority over perfected federal tax liens. *Pioneer American Ins. Co.*, 374 U.S. at 88–89, 83 S.Ct. 1651 (holding that the relation back of a state-court final judgment to the time that a lis pendens was filed does not defeat a federal lien that was perfected and recorded prior to that final judgment being entered); *Central Bank of Tampa*, 833 F.Supp. at 896 (holding that a pre-judgment attachment remains inchoate up until the time of judgment because the amount of the lien is not conclusively established until final judgment); *Wasenius*, 1996 WL 343470 at *4 (holding that an equitable lien under Florida's lis pendens statute is inchoate until final judgment is entered in favor of the lien holder). In fact, at least one Florida state court has correctly recognized the interplay between an inchoate state lien and a perfected federal lien. *See United States v. Weissman*, 135 So.2d 235, 237–39 (Fla. 2d DCA 1961).

Applying the reasoning of the aforementioned opinions to the instant case, the Court finds that the government's interest in the Lisa Lane property is superior to any interest that the plaintiffs may have. As noted above, the plaintiffs did not receive a final judgment against William Tully in their state civil action until April 20, 1999. Thus, any lien that they may have on the Lisa Lane property was perfected at the earliest on April 20, 1999, fourteen days after the government recorded its perfected lien. Therefore, the plaintiffs' interest in the Lisa Lane property remained inchoate until April 20, 1999, notwithstanding the language of section 48.23 of the Florida Statutes.

Accordingly, it is ORDERED AND ADJUDGED that the United States' motion for summary judgment (Doc. No. 9) is GRANTED. The plaintiffs' cross-motion for summary judgment (Doc. No. 16) is DENIED. The Clerk is instructed to CLOSE this case, and all other pending motions are DENIED AS MOOT.